THE STATE ex rel. AMERICAN CENTRAL INSURANCE COMPANY v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

Division Two, July 19, 1921.

1. **ACTION AT LAW: Equitable Defense: Subrogation: Destroying Action.** To convert an action at law into a suit in equity the matters set up in the answer as constituting the equitable defense must, taken as true, destroy plaintiff's right to recover, and must ask for affirmative relief on that ground.

2. ———: ———: **Action on Insurance Policy: Subrogation to Plaintiff's Right.** Where the trustee and mortgagee brought action on a fire insurance policy, which contained a rider to the effect that, when the company shall pay the loss to the trustee or mortgagee and claim no liability to the mortgagor existed, it shall be legally subrogated to the rights of the party to whom the payment is made, said rider did not purport to destroy the plaintiffs' legal action on the policy as their interest might appear, and a plea of

its provisions in defendant's answer, which also denied liability on the policy, did not convert the action at law into a suit in equity.

3. ———: ———: ———: ———: **No Payment.** Where the trustee and mortgagee bring suit on a fire insurance policy, which contains a clause that the company, upon paying the loss to them, may be subrogated to all their rights under any securities executed by the mortgagor and held by them, a plea asking that defendant be so subrogated is unavailing, and so far as the plaintiffs are concerned states no equity, if the defendant has neither paid plaintiffs' demand nor paid the amount thereof into court for their benefit. There can be no subrogation to a plaintiff's rights until his demand has been paid.

4. **ACTION ON INSURANCE POLICY: Brought by Trustee and Mortgagee: Bringing in Mortgagor.** In an action at law on a fire insurance policy brought by the trustee and mortgagee for the amount of the insurance upon the mortgaged property, it is not proper to require the mortgagor or his grantee to appear and plead to plaintiff's cause of action, since they are not only unnecessary parties, but have no interest in the controversy between the plaintiffs and the defendant insurance company.

5. ———: ———: ———: **Concealment of Real Owner: Knowledge of Company: Action at Law.** Property was conveyed to Martin and the deed recorded, and a fire insurance policy was issued to him as the insured; immediately thereafter, by an unrecorded deed, Martin conveyed to Krupnick, who was in fact the beneficial owner, and who executed certain notes to one of the plaintiffs and secured them by a deed of trust to the other as trustee, and said trustee and the payee of the notes bring suit on the policy. Defendant, by answer, prayed that Martin and Krupnick be made parties defendant, and pleaded that the policy was void because of the concealment from defendant of lack of title in Martin and of the interest of Krupnick. Being made parties, Martin disclaimed any beneficial interest and averred that the property was conveyed to him for the purpose of having it conveyed to Krupnick; Krupnick pleaded that he was the owner of the real estate, subject to the deed of trust; that defendant had full knowledge of all the facts before and after said policy was written, and with such knowledge received and retained the premium, and that by reason of such knowledge the policy was not void. In its counter-plea, defendant denied it had said knowledge. *Held*, that these issues were purely legal in their nature and triable by a jury; and that the action on the policy was not converted into a suit in equity, by a further plea by defendant that it was subrogated, by the terms

384 SUPREME COURT OF MISSOURI,

State ex rel. Am. Cent. Ins. Co. v. Reynolds.

of the policy, to the mortgagee's right to the notes executed by Krupnick, for such plea did not purport to destroy Krupnick's right of action, and even if it had it would have been unavailing, because defendant had not paid plaintiff's demand.

6. ———: ———: ———: ———: **Waiver: Authority of Agent: Facts upon Certiorari.** Upon *certiorari* to the Court of Appeals, in which it was ruled that the defendant insurance company was charged with whatever knowledge was acquired by its inspector a few weeks after the policy was issued, it will not be held by the Supreme Court that the facts shown in evidence were not sufficient to establish such knowledge or the inspector's authority to waive any concealment by the insured of the true ownership of the insured property, where, upon the partial facts recited in the opinion of the Court of Appeals, no ground for quashing its judgment appears, the entire evidence being presumably before the Court of Appeals, and only such portions of it can be considered by the Supreme Court as appear from its opinion.

*Certiorari.*

WRIT QUASHED.

*Leahy & Saunders* and *David W. Voyles* for relator.

(1) With reference to whether the opinion predicates waiver upon alleged knowledge of Brown, we quote from the opinion of the respondents, as follows: "It (appellant) knew of the claim or change of ownership certainly a few weeks after issue of the policy." Since the status of the parties as of the date of the fire must have been in contemplation, and the adjuster learned nothing, according to the opinion of the respondents, until after the fire, this ruling in the opinion could only have referred to the knowledge, if any, acquired by Brown. (2) The right of an insurance company to subrogation is one of equitable cognizance, and a court of equity, having jurisdiction of the subject-matter, has power to determine all incidental questions effecting the right claimed. Traders Ins. Co. v. Agricultural Ins. Co., 142 Ill. 338, 346. (3) The power of a court of equity is not limited to settle the rights of parties upon what has been done in the past, but it reaches forth and declares their rights and duties for the future, and in the exercise of this power

it will decree that when sureties have paid the debt of their principal they shall be subrogated to the rights of the creditor. City of Keokuk v. Love, 31 Iowa, 119. (4) The doctrine requiring payment as a condition to the right of subrogation can only be invoked by the creditor for his own protection; and is never applied to defeat contract obligations, in the interest of the debtor alone. Skinkle v. Huffman, 52 Neb. 20; Keokuk v. Love, 31 Iowa, 124; Motley v. Harris, 1 Lea (Tenn.) 577, 583; Sheldon on Subrogation (2 Ed.) sec. 128. See also, Comins v. Pottle, 35 N. J. Eq. 94. (5) The contract in this case by which, alone, the mortgagee could acquire rights in the insurance fund if the policy was void as to the mortgagor, specifically provided for subrogation. (6) Payment of the demand of a creditor without agreement that the securities be assigned or kept on foot for the benefit of the payor, extinguishes the debt absolutely. Sandford v. McLean, 3 Paige (N. Y.) 117, 23 Am. Dec. 773. And subrogation will never be decreed in favor of a mere volunteer. 25 R. C. L. sec. 11, Article "Subrogation." Nor in favor of one who fails to assert his rights until rights of others intervene. Id., sec. 76. Hence, there is no equity in the contention that it was the duty of appellant to pay the policy without an assignment with the certainty that the mortgage would be surrendered and released, compelling appellant to take the chance that rights of third parties might intervene. Especially is this true, in view of the fact that an assignment *pro tanto* would in no manner have been detrimental to the mortgagee. (7) Where a contract of insurance provides for an assignment, the mortgagee is not entitled to payment without assigning the whole, or so much of, the security as would cover the amount due under the policy. Fire & Marine Ins. Co. v. Wetmore, 32 Ill. 221; Kip v. Ins. Co., 4 Edw. Ch. (N. Y.) 86; Attleborough v. Security Ins. Co., 168 Mass. 148; Fire Ins. Co. v. Fidelity Trust Co., 123 Pa. St. 516. (8) No demurrer was filed, or any other objection made by any of the parties to the sufficiency of

the cross-bill; the contention that it did not present a case in equity because the insurance company had not paid the policy, could not have availed Krupnick; yet he was made a party and failed to make the contention below; the point could only have been raised by the mortgagee, who, a party, failed to make it. Such contention could only have been made by the mortgagee, coupled with a showing that some detriment flowed to him from an enforcement of the contract providing for subrogation.

*George B. Webster* and *Elliott W. Major* for respondents.

(1) It was not error on the part of the circuit court to try the issues between Hayden and Meininger, as plaintiffs, and the relator, as defendant, by a jury, nor on the part of the Court of Appeals to affirm the judgment. R. S. 1909, sec. 1989; Rand-McNally Co. v. Wickham, 60 Mo. App. 44; Barnard Co. v. Monett Mfg. Co., 79 Mo. App. 153. The amended answer and cross-bill of the relator did not convert their action at law into a proceeding in equity, since it prayed no equitable relief against them. Lincoln Trust Co. v. Nathan, 175 Mo. 32; Thompson v. Bank, 132 Mo. App. 225. Subrogation is a species of relief which falls within the concurrent rather than the exclusive jurisdiction of equity. 4 Pomeroy on Eq. Jurisprudence (3 Ed.) sec. 1416. There is no conflict between anything in the opinion of the Court of Appeals in this case and the rule of the Lowenstein Case, 227 Mo. 100. (2) The opinion of the Court of Appeals in this case does not conflict with the decisions of this court in such cases as Myers v. Schuchmann, 182 Mo. 159, or Wendover v. Baker, 121 Mo. 273, because in those cases there was in the answer a prayer for affirmative equitable relief against the plaintiff, while here there is none. (3) There is no conflict with the opinion in Carter v. Metropolitan Life Ins. Co., 275 Mo. 84, which case involved the fraudulent alteration of a policy, and was

in effect a proceeding to reform, and rested wholly upon fraud or mistake. (4) The Court of Appeals did not come into conflict with the opinion of this court in the case of James v. Mutual Life Ins. Co., 148 Mo. 1, or any other opinion of this court, in its holding that the relator had knowledge of the true condition of the title, and waived its right to avoid the policy by retaining the premium and failing to act within reasonable time. Laying aside the evidence of Krupnick's alleged conversation with Brown, the inspector, there was still ample ground and reason for the holding of the Court of Appeals in the testimony of Olsen, the relator's adjuster, in which he admitted having acquired knowledge of Krupnick's ownership of the property insured while adjusting another loss arising out of the same fire.

RAILEY, C.—Petition for *certiorari*, by the State, on the relation of American Central Insurance Company, a corporation, against George D. Reynolds et al., judges of the St. Louis Court of Appeals, to have this court quash the record of the Court of Appeals in the case of C. E. Hayden, Trustee, and others, against the American Central Insurance Company, 221 S. W. 437, and following. It is contended by the relator here that the opinion of the Court of Appeals contravenes certain rulings of this court.

The facts, as set out in the above opinion, read as follows:

"This is an action on an insurance policy for $3,100, for a term of three years from January 21, 1914, at an annual premium of $46.50, the policy issued in favor of George F. Martin, as owner. By rider attached, in case of loss, the amount of insurance is payable to C. E. Hayden, trustee for Arthur O. Meininger. The suit was instituted by Arthur O. Meininger, mortgagee under the two deeds of trust, herein after referred to, and C. E. Hayden, trustee in those deeds of trust, against appellant, to recover, under the mortgage clause attached to the policy, the amount of insurance covered,

total loss of the property insured, a frame dwelling, known as 1725 Princeton Avenue, being averred. Judgment was demanded for $3,100 under the policy, with interest from March 6, 1915, at six per cent per annum, and for $310 as damages for alleged vexatious delay, and for a reasonable attorneys' fee. The suit was filed May 7, 1915. Entry of appearance made by appellant, defendant below.

"On February 9, 1916, appellant filed its amended answer, and what is designated by appellant as a cross-bill, setting up in the answer that the policy was issued in the name of George F. Martin, as insured, but that the property insured was in fact owned by one Adolph Krupnick at the time the policy was issued, and it prayed that Martin and Krupnick be made parties defendant. Appellant averred that said policy was void, because of the concealment from it of lack of title of Martin and of the interest of Krupnick. By way of its cross-bill, as it is called by appellant, it set up the same facts, averred that by reason thereof the policy was void, and sets out the subrogation clause as follows:

" 'It is also agreed that whenever this company shall pay to the mortgagee or trustee any sum for loss under this policy, and shall claim that as to the mortgagor or owner, no liability therefor existed, it shall at once and to the extent of such payment be legally subrogated to all the rights of the party to whom such payment shall be made, under any and all securities held by such party for the payment of said debt. But such subrogation shall be in subrogation to the claims of said party for the balance of the debt so secured. Or this company may, at its option, pay the said mortgagee or trustee the whole debt so secured, with all the interest which may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made an assignment and transfer of said debt, with all securities held by said party for the payment thereof.'

"Appellant then avers that if plaintiff, as trustee or mortgagee, had any interest in or title to the property, or

any right to the insurance under the policy, it (defendant insurance company), as insurer under the policy, claims its right to be subrogated to the rights of the mortgagee under the mortgage securities. The defendant further avers that Martin and Krupnick are necessary parties, interested in the subject-matter of the case, and that a complete determination of the action cannot be had without the presence of both of them.

" 'In that the defendant herein claims the right to be subrogated to the rights of the plaintiff, Arthur O. Meininger, in and to the securities held by him, constituting a first and second lien, as stated in this answer, on the real estate, the legal title of which is in said George F. Martin, and the equitable title of which is in said Adolph Krupnick, and defendant therefore prays that the said George F. Martin and Adolph Krupnick be made parties defendant to said cause.

" 'Defendant states that frequently since the occurrence of said loss it has offered to pay to said plaintiffs $3,000 of said policy, provided the said plaintiffs transfer to defendant the said promissory notes secured by deeds of trust set out in the said petition, but that plaintiffs have declined and refused to transfer said promissory . notes secured by said deeds of trust, or to subrogate defendant to the rights of plaintiffs in said property.' (The offer of $3,000 is under the erroneous supposition that the $3,100 also covered the outbuildings.)

"Admitting that it has not paid the policy but denying that its refusal was vexatious or for delay, defendant tenders into the court the premium received and the interest thereon.

"Plaintiffs' reply was a general denial. Thereafter the court ordered that Martin and Krupnick be made parties defendant, each of whom filed a pleading by way of answer and reply. Krupnick averred that he had been the owner of said property since September 13, 1913, subject to the deeds of trust, averred that appel-

lant, American Central Insurance Company, at all times had full knowledge of said fact, and denied that it was entitled to subrogation.

"The answer of Martin was substantially to the same effect, except that he disclaimed any beneficial interest in the property, and stated that the deeds conveying the premises were made to him for the purpose of having the property conveyed to Krupnick.

"By way of reply to these pleadings, appellant specifically denied that it had any knowledge that Krupnick was owner, and of any conveyance from Martin to Krupnick, and averred that it first learned of these facts long after the occurrence of the fire, and that it has tendered into court the amount of the premium with interest.

"The first and second deeds of trust were executed September 12, 1913. The Night and Day Bank of St. Louis had prior thereto owned the insured property, referred to as the Princeton Avenue or Richmond Heights property. Adolph Krupnick, prior to that date, owned improved real estate on Dickson Street in St. Louis, also incumbered. With the aid of one Altheimer, a real estate agent, the bank (which carried the Richmond Heights property in the name of Arthus O. Meininger), on September 12, 1913, traded the Richmond Heights property to Adolph Krupnick, for his interest in the Dickson Street property, Altheimer acting as agent for both parties. Krupnick at the time had some children by his former wife, since deceased, and for family reasons did not want to have his name of record as the owner of the real estate. Accordingly, Meininger, acting for the bank, made a deed conveying the Richmond Heights property to George F. Martin, a collector in the employ of Altheimer, Martin and his wife, contemporaneously therewith, executing the first and second deeds of trust upon the property, to secure notes payable to the order of Meininger. On the next day Martin and his wife executed a deed conveying the fee-simple title in and to the Richmond Heights property, subject to the deeds of trust, to Adolph

Krupnick, and it was agreed between Altheimer and Krupnick that this deed would remain unrecorded in the possession of Altheimer until such time as Krupnick called for it.

"There is no record evidence that either of plaintiffs knew that Martin had made the conveyance to Krupnick, or knew of the agreement between Altheimer and Krupnick that any deed should remain unrecorded. Nor was there any written application for the policy, the request for its issue having been made over the telephone to the defendant's city office. It should also be noted that while defendant claims that the policy covered only $3,000 on the house, and that the $100 was on the outbuildings, etc., the policy itself calls for '$3,100 on the two-story, shingle-roof frame building and additions thereto,' after which appears this: 'Nil on fencing, stable and outhouses belonging to above-described building.' These were not injured or destroyed.

"The first deed of trust was to secure a promissory note for $2,500 and interest notes in the sum of $75, one due every six months, until maturity of the principal note, which was due five years after date, or September 12, 1918.

"The second deed of trust, executed the same day, to-wit, September 12, 1913, was to secure the sum of $875 purchase money, evidenced by fifty-eight promissory notes of $15 each, payable in from one to fifty-seven months after date, and one note payable fifty-eight months after date for $20.

"At the time of the fire these deeds of trust remained unpaid; and at the time of the trial there was still due on the first mortgage $2,500, and on the second mortgage $875, making a total of $3,375. The policy was issued January 21, 1914, for a premium of $46.50, insuring George F. Martin for the term of three years, from the 20th day of January, 1914, in the sum of $3,100, on the dwelling house in question. It is the New York standard policy, and contains provisions render-

ing it void in case of concealment or misrepresentation of any material fact or circumstance concerning the insurance or subject thereof, or if the interest of the insured be not truly stated, or if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple. The policy bears a mortgage clause providing that it is payable, in case of loss, to C. E. Hayden, mortgagee or trustee, as in the mortgage clause provided, which clause also contains the provision, among others, that the interest of the mortgagee or trustee shall not be invalidated by any act or neglect of the mortgagor or owner, etc.; provided, among other things, that the mortgagee or trustee shall notify the company 'of any change of ownership, or increase of hazard which shall come to his or their knowledge, and shall have permission for such a change of ownership or increase of hazard, duly indorsed on the policy,' and further providing, that if the company 'shall pay the mortgagee or trustee, any sum for loss under this policy, and shall claim that as to the mortgagor or owner, no liability therefor existed, it shall at once and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made, under any and all securities held by such party for the payment of said debt.'

"The policy was applied for by the mortgagee, Arthur O. Meininger, and issued by the N. R. Wall & E. T. Campbell Agency Company, representing the appellant. Meininger, in making application for the policy, gave the name of George F. Martin as the owner of the property, and did not disclose the interest of Krupnick in the property. Meininger had been acquainted with Krupnick for a considerable time prior to making application for the policy, and Krupnick had told him before he applied for the policy that he owned the Princeton Avenue property. About February 11 or 12, 1914, the Wall-Campbell Agency Company made a request for an inspection of the physical condition of this prop-

erty, and the inspection slip, or paper used for that pur-
pose, was turned over to one Brown, who had been in
the employ of the American Central Insurance Company
for many years, whose authority was then limited to an
inspection of the property and to the incidental duty,
as appellant claims, ·of reporting any facts he might
learn regarding the ownership or hazard incident there-
to.   The inspection slip set out that the assured was
George F. Martin; and under the head of 'Occupancy,'
Brown filled in the words, 'Dwl. of owner,' along with
some other notations as to the physical condition of the
property, signed his name to it, and turned it in to the
Wall-Campbell Agency Company.

"The fire occurred November 6, 1914, and a few
weeks after the fire, one Olson, in the employ of the
Western Adjustment & Inspection Company, insurance
adjusters, who had been requested to adjust a loss sus-
tained by Krupnick as to certain furniture, under a pol-
icy issued by some other company than appellant, took
the furniture loss up with Krupnick and adjusted it, and
in that connection was told by Krupnick that he owned
the house.   Neither Olson nor his employer had at that
time been employed by the appellant herein to do any
adjusting with reference to the policy in suit.   Subse-
quently, however, when that Inspection Company was
employed by appellant, Olson, learning shortly after the
fire, that a claim was being made for the insurance by
the holder of a deed of trust, took the matter up with
Mr. Altheimer and inquired of him who George F. Mar-
tin was. Altheimer informed him that he was the third
party in this transaction; that the policy had not been
transferred nor the deed recorded, but that Mr. Krup-
nick was the owner.   Olson then went to Clayton and
examined the records of the Recorder of Deeds and re-
ported to appellant.   What he reported does not clearly
appear, but presumably that Krupnick was owner of
the property—at least he, acting as adjuster for appel-
lant, knew that.   This was a few weeks after the fire.

"There is practically no controversy as to the facts in this case except with reference to the contention made by attorneys for Krupnick, that at the time the inspector, Brown, visited the dwelling, about February 11 or 12, 1914, after the policy was issued, which was on January 21, 1914, he knew that Krupnick lived there, greeted him by his name, and on that occasion was informed by Krupnick that he owned the property. Krupnick testified that, when Brown came to the house, he inquired, 'Does Mr. Krupnick live here?' and was informed by Krupnick that he did. Krupnick was corroborated in this by some of his children who were present. Brown denies that he had such knowledge or conversation.

"The case was called for trial on the 24th day of April, 1916, and over the protest of appellant the court directed that the issues between it and the respondents Meininger and Hayden be tried before a jury, excluding from said trial the other defendants, Martin and Krup-nick; and at the end of that trial the court directed the jury to find a verdict in favor of said respondent, submitting, however, the question of vexatious delay.

"Thereafter, on the 1st day of May, 1916, the verdict of the jury in the first named trial having been received and filed by the court, the court proceeded to try the issues between appellant and defendants Martin and Krupnick, over the protest of appellant, before a jury in exactly the same manner, and, as before, at law. At the conclusion of this trial, the court submitted to the jury the issue raised by defendants Martin and Krupnick, that the policy, though invalid because of Martin's lack of ownership at the time of the issuance of the policy, unless said provision was waived, was binding and valid if the jury found that Brown, while making inspection, was told by Krupnick that he was the owner, and that Brown made no objection nor suggestion to Krupnick that such fact would invalidate the policy, and that the appellant thereafter retained the premium and did not cancel the policy; that the appellant

would be deemed to have thereby waived the provision of the policy relating to title to the property, and that, in that event, the jury should return a verdict that the policy was valid as to both Martin and Krupnick. Verdict was rendered to the effect that the jury found the issues for Martin and Krupnick and that the policy was valid' as to them.

"Motions for new trial having been duly filed by appellant, after both these verdicts, the court overruled them and entered judgment upon said verdicts, that is to say, upon the first verdict in favor of plaintiffs for the amount of the policy, plus $250 attorneys' fees; and upon the second verdict, that the policy sued upon was valid as to Martin and Krupnick. Motions for new trial and in arrest of judgment were thereafter filed by appellant, and these motions being overruled, it prosecuted its appeal to this court."

The' amended answer and cross-bill filed by relator, which it is claimed converted the law action supra into one in equity, in substance, reads as follows:

(1)    It admits that on September 12, 1913, the real estate described in the petition was improved with a certain dwelling known as 1725 Princeton Avenue, in Richmond Heights; admits that on the date above mentioned, said George F. Martin, executed and delivered to plaintiff Hayden, as trustee, for the benefit of plaintiff Meininger, the deeds of trust described in plaintiff's petition; admits, that on January 21, 1914, at the time when said deeds of trust were in full force and effect, defendant, in consideration of the premium of $46.50 then and there paid to it, issued the policy sued on against fire, for a term of three years, ending on January 20, 1917, and that a rider or clause attached, provided that any loss which may accrue under said policy, should be payable to C. E. Hayden, trustee; that on November 6, 1914, while said policy was in force, the building aforesaid was destroyed by fire.

Every other allegation in the petition is denied.

(2) Further answering, defendant states, that by the terms of said policy, it was agreed that said entire policy, unless otherwise provided by agreement indorsed thereon, or added thereto, should be void if the interest of said insured, George F. Martin, in said property, be other than an unconditional and sole ownership, or if the building be on ground not owned by said insured in fee simple, or if any change, other than death of the said insured, take place in the interest, title or possession of the said property, whether by voluntary act of the insured or otherwise.

(3) Defendant further alleges, that on September 12, 1913, Arthur O. Meininger, one of the plaintiffs herein, executed and delivered to one George F. Martin, a deed in fee simple to lot 9 of Block 9, of Richmond Heights, being the property upon which the building covered by said policy was situated, and described in the petition; that on or about said date, said George F. Martin joined therein by his wife, executed and delivered to C. E. Hayden, plaintiff herein, the certain first and second deeds of trust, described in the petition; that thereafter on or about September 13, 1913, said George F. Martin, executed and delivered to one Adolph Krupnick an absolute deed to said real estate; that when said policy was issued, on or about January 21, 1914, said Krupnick, through said conveyance from Martin, was the absolute owner of said real estate, subject to the deeds of trust aforesaid; that said ownership and title were not known to defendant.

(4) That by the terms of said policy, it was agreed that if, with the consent of defendant, interest under said policy should exist in favor of the mortgagee, the conditions contained in said policy should apply in the manner expressed in such provision and conditions of insurance relating to such interest, as shall be written upon, attached or appended thereto; that the said George F. Martin and said C. E. Hayden and said Mein-

inger, concealed from defendant at the time application was made for the policy of insurance sued upon by plaintiffs, the title and interest of said Krupnick in said property; that his said title and interest therein were not made known to defendant, or insured, or mentioned in said policy; that by reason of said facts said policy was rendered null and void and of no effect at the time of said fire. Wherefore, having fully answered, defendant prays that it be hence discharged with its costs.

The foregoing parts of said amended answer, designated by way of convenience, as paragraphs 1, 2, 3 and 4, simply presented issues of law and fact for the consideration of a jury, *without any equitable matter being presented as a defense or otherwise.* The remaining portion of said amended answer, alleged to be a cross-bill demanding equitable relief, etc., in substance, reads as follows:

(5) Defendant states that said policy provided that $3,000 was the amount taken on said dwelling and $100 on the fences, stable and outhouses situated on said premises; that none of the fences, stable or outhouses, covered by said policy, were damaged by fire.

(6) This paragraph is the same as that marked (2) supra, and then continues: that if, with the consent of defendant, interest under said policy shall exist in favor of a mortgagee, or of any person having an interest in the subject-matter of said insurance, other than the interest of the insured described therein, the conditions contained in said policy shall apply in the manner expressed in such provisions and conditions of insurance, relating to such interest, as shall be written upon, attached or appended thereto.

(7) Defendant further states that it is provided in the rider attached to said policy, as follows:

"It is also agreed that whenever this company shall pay to the mortgagee or trustee any sum for loss under this policy and shall claim that as to the mortgagor or owner, no liability therefor existed, it shall at once and

to the extent of such payment, be legally subrogated to all the rights of the party to whom such payment shall be made, under any and all securities held by such party for the payment of said debt. But such subrogation shall be in subrogation to the claims of said party for the balance of the debt so secured. Or this company may at its option, pay the said mortgage or trustee, the whole debt so secured, with all the interest which may have accured thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made an assignment and transfer of said debt with all securities held by said party for the payment thereof.''

(8) Further answering, the same facts are alleged as are set out in paragraph (2) supra.

(9) Defendant further states the same facts as are heretofore set out in paragraph (3).

(10) Defendant further states the same facts as are set out in paragraph (4) supra; that said policy was not in full force on November 6, 1914, as to said George F. Martin, when said property is alleged to have been destroyed or damaged by fire.

(11) Defendant further states that, by reason of said Krupnick's ownership of said property, said policy became null and void; that defendant is not liable to said George F. Martin, or to said Adolph Krupnick; that if said plaintiffs, as trustee or mortgagee, at the date of said loss or damage, had any interest in said property, and have any right to insurance under said policy, defendant claims its right to pay to said trustee, the amount, if any, due under the terms of said policy, payable on account of said loss and damage, and to be subrogated to the interest of the said mortgagee in the deeds of trust described in plaintiffs' petition.

(12) Defendant further states that said George F. Martin and Adolph Krupnick are necessary parties, and are interested in the subject-matter of this case; that a complete determination of this action cannot be had

without the presence of both of said persons, in that the defendant herein claims the right to be subrogated to the rights of plaintiff, Arthur Meininger, in and to the securities held by him constituting a first and second lien, as stated in this answer, on the real estate, the legal title to which is in said George F. Martin, and the equitable title of which is in said Adolph Krupnick. The defendant, therefore, prayed that said Martin and Krupnick be made defendants in the cause.

(13) Defendant states that frequently, since the occurrence of said loss, defendant offered to pay said plaintiffs $3,000 of said policy, provided said plaintiffs transfer to defendants the said promissory notes secured by deeds of trust, set out in petition, but that plaintiffs have declined and refused to transfer said notes or to subrogate defendant to the rights of plaintiffs in said property.

(14) Defendant admits that it has not paid said policy, but denies that defendant's refusal to pay the same has been vexatious or for delay.

(15) Defendant further states that the premium, amounting to $46.50 for said policy, was paid to it February 6, 1914, and defendant hereby tenders to said George F. Martin, Adolph Krupnick and the plaintiffs herein, and now brings into court and deposits the same with the clerk thereto, the sum of $46.50, with interest thereon from February 6, 1914, amounting to $5.73, making a total of $52.23.

.(16) Said answer and cross-bill then concludes with a prayer that judgment be entered in defendant's favor and against plaintiffs. It further prays that if the court should find in favor of plaintiffs, it order and direct them to transfer to defendant the said notes and deed of trust set out in petition, and for a decree to the effect that defendant should stand subrogated to all and singular the rights of said mortgagee as holder of said mortgage lien, and for such other and further orders and decrees as in the premises may be just and proper.

Relator, in due time, filed a motion for re-hearing in the Court of Appeals, in above entitled cause, which was overruled and the present writ applied for by the defendant to quash the record and judgment of said court.

I.   Relator's first assignment of error, reads as follows:

"In holding that this cause was properly tried as at law and that it should not be tried as in equity, the decision of the court is in conflict with the previous controlling decisions of this court holding that where a cross-bill presents not only an equitable defense, but seeks affirmative relief which a court of equity alone has power to give, the cause is triable as a cause in equity."   In support of that contention, Carter v. Metropolitan Life Ins. Co., 275 Mo. 84, l. c. 94; Myers v. Schuchmann, 182 Mo. 159, l. c. 171, and Wendover v. Baker, 121 Mo. 273, l. c. 289, are cited.

*Equitable Defense.*

In passing upon relator's contention, and the authorities cited in support of same, it is important that we should keep in mind the issues presented by the pleadings in the case.

Hayden as trustee, and Meininger as *cestui que trust,* sued upon the policy in controversy as mortgagees, under the rider attached to said policy, to recover ·$3,100.   The alleged equitable matters set up in defendant's amended answer simply related to the subject of subrogation, on the theory that defendant had the right to pay off the demand of plaintiffs and take an assignment from them, etc.   The equity relied on by defendant *did not purport to destroy plaintiffs' legal action on the policy as their interests might appear*.   On the contrary, relator was defending *on the merits at law,* and if this defense proved *unavailing,* it desired relief in equity, by being subrogated. to plaintiff's rights .in the premises, on the theory that it had paid their demand.   On the record thus presented, we are decidedly of the opinion that the Court of Appeals

was within the law, in holding relator's amended answer aforesaid did not convert plaintiffs' case into a proceeding in equity.

In Colburn v. Krenning, 220 S. W. (Mo.) 1. c. 937, we had occasion to consider this question very carefully, where an alleged cross-bill in equity was filed, presenting substantially the same kind of a question as that now under consideration. We there gave expression to our views in the following language:

"It may be conceded in passing, that where plaintiff is asserting an action at law, if the defendant, in his answer, pleads matters of an equitable nature, and asks for affirmative equitable relief, *which, if taken to be true, would destroy plaintiff's case,* or show that he never had a valid cause of action, the whole case would be converted into a proceeding in equity. Under such circumstances, it is generally held that the equitable answer thus filed converts the entire action into a proceeding in equity to be tried by the court.

"Upon a careful consideration of the authorities, we have not been able to find any case going to the extent of holding that an answer like the one before us could deprive a plaintiff of his constitutional right of trial by jury." (Italics ours.)

The same principle is announced in the following cases: Fulton v. Fisher, 239 Mo. 1. c. 131; Lincoln Trust Co. v. Nathan, 175 Mo. 1. c. 42, 74 S. W. 1. c. 1008; Mathiason v. St. Louis, 156 Mo. 1. c. 200; Joyce v. Growney, 154 Mo. 253.

Turning to the three cases relied upon by relator under this proposition, we find that neither is in conflict with the law as heretofore declared. In Carter v. Insurance Co., 275 Mo. 84, and following, plaintiff sued on a life insurance policy. The answer set up an equitable defense, alleging that the policy was obtained through fraud, etc., and the court was asked to *cancel* the same. The equitable defense thus pleaded, *destroyed plaintiff's right to recover on the policy* and, hence, un-

289 Mo.—26

der the rule heretofore announced, converted the whole case into a proceeding in equity. In Myers v. Schuchmann, 182 Mo. 159, relied upon by relator and cited in the Carter Case, plaintiff sued in ejectment. The answer alleged that the deed from Balch to plaintiff was made through mistake and in fraud of the rights of defendants, etc. It concluded with a prayer to cancel said deed, etc. The equitable relief sought in the answer *destroyed plaintiff's case.* Under the circumstances, the trial court properly disposed of it as a proceeding in equity. In Wendover v. Baker, 121 Mo. l. c. 274, and following, relied on by relator and cited in the Carter case, the plaintiff sued on three promissory notes. Defendant, in his answer, set up an agreement by which said notes were to be cancelled, alleged that he had complied with his part of said agreement, and concluded the answer with a prayer, that plaintiff be restrained from prosecuting her action at law, and that said notes be cancelled, and surrendered to him. The facts stated in said answer, if true, destroyed plaintiff's right of recovery on said notes, and entitled him to the equitable relief prayed for. The entire case was, therefore, converted into a proceeding in equity, and should have been disposed of by the trial court accordingly.

The foregoing contention of relator is without merit.

(a) There was no equity in said answer so far as plaintiffs were concerned, for the obvious reason, *that defendant never paid the amount of their demand.* If it insisted on being subrogated to plaintiffs' rights, it

Payment.        should have paid the latter's demand, or paid the same into court, and asked for an order subrogating it to plaintiffs' rights, etc. Even without an order of court, or the formal assignment of securities held by plaintiffs, the payment of plaintiffs' demand, would have entitled relator to equitable subrogation. [25 Ruling Case Law, sec. 8, p. 1320.] The above subrogation, however, had nothing whatever to do with plaintiffs' right to recover on the policy as mortgagees.

(b)  The trial court erred in requiring Martin and Krupnick to appear and plead in plaintiffs' case, as they were not only unnecessary parties therein, but had no interest in the controversy pending between relator and plaintiffs. [Fulton v. Fisher, 239 Mo. 1. c. 131-2.]

*Unnecessary Parties,*

II.  Although the trial court improperly required Martin and Krupnick to be joined as parties to plaintiffs' action, yet they appeared and plead therein. Martin disclaimed any beneficial interest, and answered that the premises were conveyed to him for the purpose of having said property conveyed to Krupnick. The latter pleaded to said action, after having been brought in at the instance of relator, and alleged, in substance, that he was the owner of the real estate in controversy, subject to said deeds of trust; that said insurance company had full knowledge, at the time it wrote the policy, of all the facts stated in said pleading; that it had full knowledge before and after said policy was written, of all the facts aforesaid, and, with this knowledge, kept and retained the amount of premium paid for said insurance; that by reason of the foregoing, said insurance was not void, etc. The relator pleaded to said answer, and denied that it had any knowledge of the above facts pleaded by Krupnick.

*Concealment: Knowledge of Defendant.*

It will thus be seen that the issues between Krupnick and relator were purely *legal* in their nature, and properly triable before a jury. The *equitable* matter set out in the cross-bill, *did not purport to destroy Krupnick's right of action,* but was pleaded as *subrogation,* without paying plaintiffs' demand as heretofore shown. The authorities cited in the preceding proposition apply with equal force to the above facts. The case was, therefore, properly tried throughout as an action at law, and the Court of Appeals was right in so holding.

III.  Relator's second assignment of error, reads as follows:

"The decision of the Court of Appeals that the relator is charged with whatever knowledge was acquired a few weeks after the issuance of policy, by its inspector Brown, though such knowledge, if any, was not shown to have been communicated by Brown to any superior agent or officer of the relator, is in conflict with the previous controlling decision of this court in the case of James v. Mutual Life Insurance Company, 148 Mo. 1, l. c. 11, in that said Brown was not shown to have received such authority from the relator as would constitute him the agent of relator with power to bind the relator by his acts and knowledge as if under the circumstances the relator had acted for itself."

*Knowledge of Agent.*

The James Case, supra, came to this court on appeal from the circuit court, and all the evidence was before us. Upon page 13 of the James Case, it was said: "The question of waiver is, like any other fact in the case, essentially a matter for the jury."

The entire evidence was presumably before the Court of Appeals, but only such portions of same can be considered here as appear from the opinion of the Court of Appeals. [State ex rel. Bush v. Sturgis, 221 S. W. (Mo.) 91.] On the partial facts before us, we find no grounds for quashing the record and judgment of the Court of Appeals on account of alleged conflict between its opinion, and that of this court in the James Case supra. The above contention is accordingly overruled.

IV.  Relator's third assignment of error reads as follows:

"The decision of the Court of Appeals discloses facts conclusively proving that relator at the date of the fire is not liable under said policy to Martin, the mortgagor; and in refusing, as in equity, to consider and enforce subrogation as provided in the mortgage clause, as an incident to a finding of the court that relator is liable to pay the mortgagee under the mortgage clause, the decision is in conflict with the

*Subrogation.*

previous controlling decisions of this court that a person secondarily liable, who pays the debt of another, is, as against the debtor primarily liable, entitled to be subrogated to all the rights of the creditor under the securities held by him. [Loewenstein v. Queen Insurance Co., 227 Mo. 100, l. c. 117.]''

The main points relating to this assignment of error have been fully considered under propositions one and two of this opinion. We hold that there is no conflict between the conclusions reached by the Court of Appeals in this case, and the principles of law declared in the Loewenstein Case above mentioned.

V.   It is undisputed in this case that no part of the loss sustained by plaintiffs has ever been paid. The relator was not entitled to be subrogated to
No Payment.          the rights and remedies of plaintiffs until it had paid their demand. The alleged equitable defense injected into the cause did not convert the case into a proceeding in equity. On the contrary, it was properly disposed of as a proceeding at law. · Under the circumstances, there was no place for equitable subrogation in the case. The opinion of the Court of Appeals is in harmony with the former rulings of this court.

The writ heretofore issued is accordingly quashed. *Mozley* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion of Railey, C., is hereby adopted as the opinion of the court. All of the judges concur.