LIZZIE RITZ, ALIAS LIZZIE KING, RESPONDENT, v. COUSINS LUMBER COMPANY, APPELLANT.—59 S. W. (2d) 1072.

Kansas City Court of Appeals, April 3, 1933.

1168

*Shultz & Owen* for respondent.

*Stringfellow & Garvey* for appellant.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $7,000 and defendant has appealed.

The facts show that plaintiff was injured on March 3, 1930, about eleven miles east of the city of St. Joseph, and while she was standing on the north side of Highway No. 36. She was struck by an automobile being operated at the time by one Roland Johnston. Plaintiff, while riding in her car with one Smith, had suffered an accident to it a night or two before the day of the happenings in question and, on that day, they had returned to the scene of the accident with Edward C. Burke, an attorney of St. Joseph, to ascertain upon which side of the road the accident had occurred. Upon arriving in the vicinity of that accident they parked plaintiff's car, a large Franklin sedan, headed toward the east on the south side and off of the paved portion of the highway, the car being located on the dirt shoulder

immediately adjacent to the concrete pavement. The pavement was eighteen feet in width.

Smith and Burke alighted and walked back a distance of about seventy-five feet to the point where the accident was suppsed to have happened and were upon the north shoulder of the pavement at the time of the happenings giving rise to the collision which is the subject of this suit. Plaintiff, after remaining in the car a moment or so, alighted and started to follow them. She walked to the south of her car and had arrived at a place a short distance, possibly three or four feet, behind the same, and about the center thereof, on the dirt shoulder. She stood there facing toward the two men, when she was struck by a Dodge car being driven by said Johnston, a boy fifteen years of age. This car was occupied by Johnston and his mother. Plaintiff's car was parked upon a grade toward the east about 250 or 300 feet from the crest of a hill to the rear.

Noland Johnston testifying on behalf of defendant, stated that he was driving an old Dodge car eastward and had been following, for a mile or so prior to the collision, a Chevrolet car owned by the defendant and being driven eastward by one Wilson, its employee; that during this time he had been driving between forty and fifty to two or three hundred feet to the rear of the Chevrolet car; that when he arrived at a point about 360 feet to the west of the point of the collision with plaintiff, he had a view in front of him for a mile or more; that he did not notice plaintiff's car until he was about 250 feet from it; that at that time the Chevrolet car being driven by Wilson was probably forty or fifty feet ahead of him; that when the Chevrolet car reached a point about fifteen or twenty feet from plaintiff's car it started to slow down; that at that time the witness' car was thirty feet behind the Chevrolet, traveling at the rate of about thirty to thirty-five miles per hour; that immediately upon his seeing the Chevrolet car start to slow down he applied his brakes and turned to the left, with the idea of going around the Chevrolet car, but seeing another car approaching near from the opposite direction, he concluded that it was not safe to do this, so he swerved his car to the right "off of the pavement and noticed Mrs. King (plaintiff) standing behind her car and then swerved back to the left to avoid hitting her and . . . the right bumper (of his car) struck Mrs. King . . . and the left bumper of her car and the junction of the running board and the right front fender of the Chevrolet car;" that just as he struck the Franklin car (plaintiff's) his car (the Dodge) "crowded the Chevrolet car more into the middle of the highway, bounced away from the Franklin car and the Chevrolet car was crowded against mine;" that after he struck the Chevrolet car his car came to a complete stop; that at the time the Chevrolet car started to slow down it was about fifteen feet

west of plaintiff's car, so that his car traveled forty-five feet, after he noticed the Chevrolet car slowing down, until it reached plaintiff's car. He further testified that his brakes were in good condition.

There was other testimony that the Chevrolet car appeared to begin to stop or slow down at a point about fifteen feet from the place where it stopped and that it made a "very sudden stop;" that it slowed down and stopped on the pavement along side of plaintiff's car; that the two cars came down the hill traveling from thirty to thirty-five miles per hour and from twenty-five to forty feet apart.

There was evidence that the Chevrolet was a new car and was equipped with four wheel brakes and a stop light; that the stop light lighted immediately upon the application of the driver's foot to the brakes; that the Dodge car was equipped with two wheel brakes and could not have been stopped in as short a distance as the Chevrolet car. The evidence shows that Wilson gave no other signal of his intention to stop save the one by the stop light. There was evidence that it required as much as forty-five to fifty feet in which to stop a car, such as this Dodge car, going at the rate of thirty to thirty-five miles per hour.

The record is not very clear as to where plaintiff was situated when the cars came over the top of the hill, but it would appear from Burke's testimony that she was then standing to the rear of the car.

Wilson was dead at the time of the trial and there was no opportunity to produce his testimony. There was no evidence as to why he made the stop in question. Plaintiff testified that "she didn't know why."

This suit at one time was pending against Roland Johnston and his mother, Mrs. G. W. Johnston, as well as the present defendant, but it was later dismissed as to the Johnstons. The amended petition, upon which the case was tried, alleges "that defendants and their agents negligently operated said automobiles in such a manner as to cause the automobiles—operated by defendants, Roland Johnston and Mrs. G. W. Johnston—to strike plaintiff and injure her; that the defendants, and their agents, saw or, by the exercise of the highest degree of care, could have seen plaintiff in a place of danger, in time, by the exercise of the highest degree of care, to have avoided striking her and injuring her, and negligently failed to do so."

The answer of the present defendant consists of a general denial.

It is insisted by the defendant that its instruction in the nature of a demurrer to the evidence should have been given:

"First, because the evidence does not show that Johnston's car could have been stopped; Second, because the evidence does not show that with any reasonable control of the Johnston car the collision could have been avoided; Third, because in any event the driver of

the car ahead cannot be held negligent for failing to anticipate that the driver of the car behind would be unable to so control his car as to avoid injuring plaintiff.''

In arguing this point defendant discusses the testimony given by its witness, Roland Johnston, in his deposition, which contradicts some of his testimony at the trial and defendant also points out that Roland Johnston, at the trial, stated that, when he said in his deposition that when he first came over the hill he saw the ''cars 200 feet away,'' he testified to the truth. Defendant having put this witness on the stand, vouched for the credibility of his testimony *given at the trial,* but we need not go into the question of what effect that may have had upon the situation, for in any event, the jury in weighing his testimony, was entitled to take it in the most favorable light to plaintiff and to reject what he said in his deposition, even though he said at the trial that a certain statement made therein was true when made. [Bond v. R. R., 110 Mo. App. 131; Cravens v. Hunter, 87 Mo. App. 456; Bobbitt v. Railroad, 169 Mo. App. 424; McCoy v. Home Oil & Gas Co., 48 S. W. (2d) 113, 119.]

In discussing the question as to whether the Dodge car could have been stopped within the distance in which the driver thereof was required to stop after the Chevrolet or Wilson's car started to slow down, defendant further violates the rule that when this court is discussing the question of the demurrer to the evidence, only that which is most favorable to plaintiff will be considered. [See cases last cited.] There are many facts and inferences deducible therefrom, appearing in the record before us, that are in conflict with the facts as we have stated them but it would unduly prolong this opinion to go into all of the evidence, not stated, and the various inferences that might be drawn therefrom which are argued, at length, by the defendant. In view of this we have confined our statement of the facts to those that are most favorable to the plaintiff.

We need not go into the question as to whether the burden was upon plaintiff to show that the Johnston car could not have been stopped after Wilson started to slow down his car. We might say that the evidence shows that Wilson made a very sudden stop and, for the rate of speed the cars were proceeding, one that was extremely near in front of the Johnston car. This suggests a wide field that might be inquired into, but without going into a discussion of that phase of the case, it is sufficient to say that there was ample evidence tending to show that the Johnston car could not have been stopped before striking plaintiff. The testimony of the driver thereof shows that he put his foot on the brakes ''as hard as he could,'' as soon as he saw the Chevrolet car slowing and kept his foot on them until the collision. The reasonable inference from his testimony is that

1172

his car could not have been stopped. Aside from this he required fifty feet in which to stop, but there was but twenty-five feet between the two cars.

Assuming that the question as to whether a reasonable control of the Johnston car would have avoided the collision with plaintiff, is a pertinent one, there was ample evidence from which the jury could have said that it would not. It was for that body to judge of the acts of Johnston after the emergency of the sudden slowing down of the Wilson car arose. This leaves the question as to whether Wilson, the driver of defendant's car, was negligent, under all of the circumstances.

We think that what defendant says in his brief as to Wilson's duty in the matter is well stated, with some exceptions to be hereinafter pointed out. We will therefore quote from it.

"It was his duty to so control his car as to endeavor to avoid injury to people he might meet or pass on the highway. The concrete slab was eighteen feet wide. His proper line of travel was confined to the south nine feet of that slab. As he came over the brow of the hill he saw 500 (360) feet ahead a car parked immediately adjacent to the south side of the slab. He could see the highway for half a mile ahead. He saw cars approaching from the east. As he drew nearer to the parked car, he saw a woman get out of the south side of the car and start towards the west. He saw that one of the cars from the east was traveling rapidly and would probably reach the point where the parked car was at about the same time that his car would reach that point. He saw the woman, having reached the rear of car, walk towards the slab. At some time while he was observing this, he determined it necessary or advisable to slow down and had begun to do so. At the moment he began to slow down, he knew, or should have known, that there was a car in his rear. He knew that his own car was equipped with electrical signal device which would display a signal from the rear, indicating, at the moment his foot touched the brake, his intention to stop or turn or slow down, and that therefore a hand signal of such intention need not be given. [R. S. 1929, section 7777 (K).] He knew that it was the primary duty of a driver behind to keep a lookout to observe the car ahead and its movements, and to keep his car under control, so that he would not run into the car ahead if it slowed down or stopped, and to keep his car a sufficient distance behind the car ahead in order to avoid danger in case of a sudden stop by the car ahead. He saw the condition of the highway and the surroundings."

The evidence shows that the electrical signal did not start to work until approximately the time the car itself started to slow down and that Wilson gave no other signal of his intention to slow down or stop. It was for the jury to say whether, under the circumstances,

the sudden stopping of his car by Wilson, without any prior notice to the car following of *sufficient character* to have permitted it to have stopped before colliding with plaintiff, was negligence. Clauses "L" and "K" of Section 7777, Revised Statutes 1929, refer to stopping signals to be timely given. There is nothing in this statute to justify *a sudden stopping,* that is one without timely warning. It is well settled that the driver of a forward car in making a sudden stop of this kind must give a warning to a car closely following. [Corsack v. Eastern Pkw. et al., 230 N. Y. Supp. 470; Harnik v. Astoria Mahogany Co., 215 N. Y. Supp. 219; Earle v. Pardington, 116 N. Y. Supp. 675; Strever v. Woodard, 158 N. W. (Ia.) 504; Simpson v. Snellenburg (N. J.), 115 Atl. 403; Harry v. Pratt, 285 Pac. (Wash.) 440.] Of course, such a warning must be timely. Defendant, is therefore, in error when it says that Wilson, as a matter of law, discharged his full duty by causing his stop light to go on.

Defendant is also in error in stating that plaintiff was walking toward the slab. There was evidence that she was *standing and off of the pavement,* so there is no explanation for Wilson's stopping his car on the pavement without taking notice of the comparatively near approach of the car following, without giving any timely warning sign of his intention to stop. In the case at bar there is no direct testimony that Wilson saw the Dodge car to his rear, but there is testimony that his car was equipped with a rear vision mirror and that the Dodge car had followed him for a mile or more at various distance, some of which were very close under the circumstances in view of the speed at which the cars were traveling. As before stated, there is no evidence as to why Wilson stopped his car. We have already pointed out that there was evidence that plaintiff was standing upon the dirt shoulder to the rear of her car as the two moving cars in question approached her. As her car was entirely off of the pavement, Wilson had ample space on the right, or his side, of the pavement to have passed on toward the east without stopping or slowing without timely warning, even though there were other cars approaching on the pavement from the opposite direction. While, under the facts of this case, Wilson had no control over the distance away from him at which the Dodge car followed to his rear, the jury could well say that it was his duty to use the means he had at hand to look for a car possibly following, if he did not actually know of its presence, before starting to stop and that, failing to look, he must be held responsible for any kind of a collision that naturally and reasonably followed his negligence that he could have reasonably anticipated. If plaintiff was *standing* the jury could say that there was no reason for Wilson to stop his car on her account.

Defendant argues that in order for the jury to hold Wilson guilty of negligence it was necessary for them to say that he should have

known the distance it would have required the Dodge car following him to stop, if he should attempt to slow down, without knowing with what braking device the Dodge car was equipped and how the driver of the Dodge would attempt to handle it under the circumstances, and to foretell a hundred and one specific things that might have happened or did happen intervening between the time that Wilson started to slow down his car and the time plaintiff was struck by the Dodge car. In order to hold Wilson guilty of negligence it was not necessary for the jury to find that he knew the age of the driver of the Dodge car, the degree of his intelligence, his ability to act quickly upon emergency or the exact course he would pursue. Neither was it necessary for the jury to find that he knew the make or age of the Dodge car and whether it had two or four wheel brakes, although they could not find that he knew other than that the brakes were in good condition, that was to be presumed by the jury.

The real question to be determined is, whether, under all of the circumstances, Wilson can reasonably be said to have been guilty of negligence. We think the jury could so find. Wilson had no reason to slow down or stop suddenly. That is to say, the inferences to be drawn from the evidence are that he had no good reason. Why he stopped was known only to him and he is dead. He may have stopped to inquire his way or for mere curiosity, seeing a woman standing at a stationary car with two men a short distance away. It is not our purpose to speculate upon the matter but it is sufficient to say that the jury could say that there was nothing present to justify such a sudden stop on his part. He stopped suddenly without timely warning and, apparently without looking to see if a car was closely following. This act, the reason therefor being unexplained, the jury was justified in finding to be negligence. [See cases last cited.]

Defendant, as Wilson's employer, must be held liable for any damage or casualty that he might have reasonably anticipated would result from his negligence. In Mummaw v. Tele. Co., 208 S. W. 476, 478, we quoted approvingly from another case as follows:

" 'In cases of negligence, liability does not hinge on whether, by the exercise of reasonable prudence, the very injury complained of ought to have been foreseen. The party charged may be held liable, for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.' "

What we said there applies here. It is sufficient to say that viewing the facts after the happening of the collision, the jury could find that, if Wilson reasonably could have anticipated that something would have happened to cause the Dodge car to run into plaintiff, when he suddenly stopped his car without sufficient warning, he was negligent. This could be said without it being necessary also to say

that he should have anticipated all of the various things that actually did happen to bring about the collision. In other words, it is not necessarily a question of the particular thing or things that did happen but, if a collision of the kind reasonably could have been anticipated by Wilson, then he was negligent. It was for the jury to say whether Wilson, with the knowledge he had of the conditions, reasonably could have anticipated that something of the kind that actually happened would happen.

There was evidence that there was a space of twelve feet between plaintiff's car and the edge of the dirt shoulder of the road to the south, followed, further to the south, by no ditch but merely a depression and that it was possible for the driver of the Dodge car to have passed to the right of plaintiff's car without striking her. Also there was evidence that there was a driveway, into a private property, located about eighteen or twenty feet west of plaintiff's car, which was forty feet in width at its opening but narrowed down to ten or twelve feet further on in toward the south. Defendant says that the Dodge car could have been driven either into the driveway or on to the dirt shoulder to the south of plaintiff's car, without injury to plaintiff. The witness who testified as to said distance between plaintiff's car and the south edge of the dirt shoulder, also, said, in answer to a question propounded by defendant, that if the driver of the Dodge car had attempted to go to the right of plaintiff's car it would have been "some pretty close driving. I believe he could have made it." Of course, the jury could well conclude from the evidence that the driver of the Dodge car was negligent. The fact that he drove so closely behind defendant's car at the rate of speed the cars were proceeding was some evidence of his negligence. He also may have been negligent in not going to the south of plaintiff's car along the dirt shoulder or in not driving into the driveway there present, although, it would appear that the latter would have been rather difficult.

However, his negligence does not excuse the negligence of Wilson, for if the combined negligence of the two was the proximate cause of plaintiff's injury, then the drivers of both cars and their employers are liable. [Mummaw v. Tele. Co., supra, 1. c. 477.] It was for the jury to say whether Wilson's negligence, in suddenly stopping his car without any sufficient reason therefor, and without timely signal, constituted negligence on his part.

Even though it was *possible* for the driver of the Dodge car to have avoided the collision by driving south of plaintiff's car or into the driveway, it was for the jury to say whether Wilson reasonably could have anticipated that Johnston would not do either and that plaintiff would be injured by Wilson's conduct. However, we might say that there was evidence that plaintiff's car was parked seventy to eighty feet east of the east side of the driveway and if this was

the distance there was no opportunity for the driver of the Dodge car to turn his car into the driveway after the Chevrolet car started to slow down.

Complaint is made of the action of the court in permitting plaintiff's witness, Burke, to testify that it was impossible for the Dodge car to have stopped in time to have avoided the collision with the Chevrolet car. This testimony was in answer to a hypothetical question. A similar hypothetical question was propounded to the witness by plaintiff a number of times prior to his answering. At some of these times the objection of the defendant to the question was sustained. At other times the objection was overruled and the question reframed but not answered. At one time the question was answered, over defendant's objection, but later the answer was stricken out by the court on motion of the defendant. A similar question was finally answered and the answer permitted to remain in the record. At this time the objection made to the question asked was as follows:

"We object to that. This witness does not know the condition in which the brakes on that Dodge car were and unless he had operated this particular car and knew the condition of the brakes and their operation he couldn't possibly know whether or not this Dodge car could have been stopped within any given space."

The objections now made to the evidence were not those made at the trial to the question answered, and they cannot be considered by us. [Watson v. Race, 46 Mo. App. 546.] There was no merit in the objection made at the trial to the question propounded. The witness testified that he had driven automobiles and was familiar with them; that he had, at one time, owned a Dodge car which was of a model a year later than the one involved in this case. There is a fair inference from his testimony that he had a general acquaintance with a car of the type involved in this case. The question was not subject to the objection because the witness had not operated the particular car involved herein. He knew its type and its braking apparatus and the evidence shows that the latter was in reasonably good condition. The objection to the question was not based upon the fact that it did not submit the brakes were in reasonably good working order but, however that may be, it can be reasonably inferred from the question asked that the witness was giving an opinion based upon the assumption that the brakes were in good order.

However, as the case must be sent back for another trial on account of the giving of plaintiff's Instruction No. 1, it is not improper for us to say that we see no reason why the matter that Burke testified to cannot be gotten at in the usual way by asking him the rate of speed of the cars and in what distance they could have been stopped, under the circumstances.

Complaint is made of the giving of plaintiff's Instruction No. 1. The instruction tells the jury that if they found that:

"One Roland Johnston, at all times herein, was operating an automobile east over said highway and in the rear of the automobile operated by said Wilson; that the automobile operated by said Wilson—as it approached the point where plaintiff was standing—was negligently caused by him to slow down and to suddenly stop at said point; that the automobile operated by said Johnston, at said time, was traveling at such speed and in such close proximity to said Wilson's car that a collision with said Wilson's car and a car approaching from the east (if you find there was such a car) was imminent and certain, and that plaintiff would be placed in imminent peril and danger thereby and by reason of said negligent acts of said Wilson, if you so find, and that said Wilson, in the exercise of the highest degree of care would have known that said acts by him would cause said collision to be imminent and certain; and would cause plaintiff to be in imminent peril and danger, if you so find; and if you further find from the evidence that in an effort—by said Johnston—to avoid said collision—plaintiff was struck by said Johnston's car and thereby injured; *and if you further find that said negligent acts of Wilson, if you so find, caused plaintiff to be in imminent peril and danger, and that said Wilson saw said imminent peril and danger to plaintiff, or by the exercise of the highest degree of care, could have seen the same, in time by the exercise of the highest degree of care, to have avoided said collision and injury to plaintiff, if you so find, by not slowing down suddenly and by not stopping suddenly, as aforesaid, if you find he did do so, and was thereby negligent, and that said negligence directly contributed to cause plaintiff's injuries, then your verdict will be for the plaintiff and against defendant, Cousins Lumber Company, although the jury should find from the evidence that said Johnston also failed to exercise the highest degree of care and thereby contributed to cause said collision.*" (Italics ours.)

Plaintiff's Instruction No. 2 defines the terms "highest degree of care," "negligent" and "negligence."

Among other things, defendant complains that Instruction No. 1 is based upon the humanitarian doctrine and that it submits, in that connection, an impossible situation, that is, "that Wilson should have seen plaintiff's position of peril, which he is charged with creating, in time to have avoided injuring her by not doing the act which created the position of peril. This calls for the finding of an impossibility as a finding of fact."

We think that the instruction is clearly erroneous. There is no room in this case for the humanitarian doctrine, so far as the negligence of Wilson is concerned. The humanitarian doctrine does not take into consideration any negligence of the parties arising

prior to the situation of peril. In discussing this matter the Supreme Court said:

"A situation of imminent peril is the basic fact of the humanitarian doctrine; that no duty whatever arises under that doctrine, unless and until a situation of peril comes into existence; and that when such peril arises the doctrine seizes upon the situation as it then exists and requires the one operating the dangerous instrumentality to exercise ordinary care in certain respects—to make timely discovery of the peril, if it was his duty to be on the lookout, and thereafter to avoid the infliction of the threatened injury, if he can do so with the means at hand and without jeopardizing the safety of himself and others. [See Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482; State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S. W. 1014.]

"The ruling that the antecedent negligence of a defendant may be taken into consideration in determining whether he was negligent under the humanitarian rule would in many cases permit an unwarranted recovery for primary negligence through the elimination, under the guise of that rule, of the defense of contributory negligence." [State ex rel. Fleming et al. v. Bland et al., Judges, 15 S. W. (2d) 798, 800, 801.] [See, also, Phillips v. Henson, 30 S. W. (2d) 1065, 1067; McCoy v. Home Oil & Gas Co., supra.]

In the case at bar plaintiff was not in peril until Wilson put on his brakes intending to stop. We must take the position of the parties after that time and if Wilson, by the exercise of the highest degree of care, after that time, could have avoided the collision, the humanitarian doctrine applies, but it is quite apparent that there is no room to base any reasonable theory that he could have done anything to avoid the collision after that time. Plaintiff says that after that time Wilson could have realized the situation and released his brakes, put his foot on the accelerator and gone forward; that it was the stopping of Wilson's car and not the application of the brakes that prevented the driver of the Dodge car "from making the left turn sufficiently to avoid hitting plaintiff." But it was not the standing position of the Wilson car that caused Johnston, the driver of the Dodge car, to strike plaintiff. He was not trying to avoid the Wilson car at that time but had his mind on plaintiff's safety. The whole chain of events which culminated in Johnston's car striking plaintiff, arose and was put into play by the commencement of the slowing down of Wilson's car without timely warning. It was then that Johnston began to act and the conduct of Wilson thereafter, so far as the evidence discloses, had nothing to do with the sequence of events that resulted in the collision of the Dodge car with plaintiff.

However, plaintiff says that her instruction submits primary negligence and humanitarian negligence in the conjunctive and that the

facts submitted upon the primary negligence branch of the case are sufficient to predicate liability, and, by the submission of humanitarian negligence, plaintiff merely assumed an unnecessary burden. We have set out in italics the part of the instruction we assume to be on the humanitarian branch of the case, the remainder of the instruction being on the primary negligence branch. The trouble with plaintiff's contention is that, while the petition is broad enough to justify a submission upon either theory, it pleads specific acts of negligence (Barnett v. The Star Paper Mill Co., 149 Mo. App. 498), and the primary negligence submitted in the instruction is not that pleaded. The negligence pleaded is alleged to have taken place after the danger arose. The primary negligence submitted in the instruction created the danger. [Gandy v. Ry. Co., 44 S. W. (2d) 634; Begonia v. R. R. Co., 224 Mo. 564.]

The judgment is reversed and the cause remanded. All concur.