James E. WALDRIP, Respondent,

v.

AMERICAN BUSLINES, INC., a Corporation, and George R. Durrant, Appellants.

No. 47354.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

Motion to Modify Opinion Denied Sept. 14, 1959.

Charles F. Lamkin, Jr., Norman E. Greene, Kansas City, Price Shoemaker, St. Joseph, for appellants.

Warrick & Lamkin, Kansas City, of counsel.

Clay C. Rogers, James W. Benjamin, Kansas City, for respondent.

Rogers, Field, Gentry & Jackson, Kansas City, Strop & Strop, St. Joseph, of counsel.

HYDE, Presiding Judge.

Action for damages for personal injuries. Plaintiff had verdict and judgment for $11,392.75 and defendants have appealed. Defendants contend that plaintiff failed to make a jury case so we will state the facts shown by plaintiff's evidence, which was the only evidence as to the occurrence, defendants offering only documentary evidence not now material on this issue.

On the day of the casualty, plaintiff, a telephone lineman, was standing on the shoulder on the east side of U. S. Highway 71, in front of the telephone company's maintenance truck with a pole trailer attached, about 180 feet south of the intersection with Arkoe Road, when a gravel truck driven by Charles Burchett came north, over the hill to the south, followed by a bus owned by defendant American Buslines and driven by defendant Durrant. Highway 71 (pavement 18 feet wide) ran north and south and Arkoe Road east and west. It was 2,400 feet from the Arkoe Road intersection to the top of the hill south of the intersection. Coming down the hill, the bus overtook the gravel truck, ran parallel to it on the left (west) side of the pavement for some distance, then passed it and turned back to the right (east) side. Before reaching the telephone truck, the gravel truck went off the pavement, struck the left rear corner of the telephone truck and turned over on plaintiff. Plaintiff originally sued the owners and drivers of both vehicles but settled the case against the owners and driver of the

gravel truck by executing a covenant not to sue, the consideration therefor being $8,785.50. The negligence submitted against defendants herein in Instruction 1 (leaving out "if you find", etc.) was that "While plaintiff James E. Waldrip was so standing, a gravel truck driven by one Charles Burchett mentioned in evidence was being driven in a northerly direction on said Highway 71, and that at said time the defendants American Buslines, Inc., and George Durrant, its bus driver, drove and operated the bus mentioned in evidence north on said Highway 71 and passed the said gravel truck as the two vehicles were approaching the place near where plaintiff was standing, * * * that the defendants American Buslines, Inc., and George Durrant, after having driven said bus past the said gravel truck, turned and drove said bus closely in front of said gravel truck, and when said gravel truck was within approximately fifty feet behind said bus, * * * the driver of said bus negligently and carelessly, * * * and without reasonable cause, if so, applied the brakes on said bus and thereby displayed red lights on the rear of said bus indicating an intention to reduce speed or stop, and when the bus driver knew, or in the exercise of the highest degree of care should have known, that by so doing he would be reasonably certain to cause the driver of the gravel truck to lose control of his truck, * * * that the bus driver was negligent, in the circumstances as shown in evidence in so doing, if he did so, and * * * that such negligence, if any, on the part of said bus driver directly caused or directly contributed with any negligence on the part of the driver of the gravel truck to cause the gravel truck to strike and injure plaintiff James E. Waldrip."

The only persons who saw the course of the gravel truck and the bus were plaintiff, the gravel truck driver Burchett and the bus driver Durrant. Only plaintiff testified at the trial; but depositions of Burchett and Durrant were used. Burchett's testimony was that he first saw the bus behind him when he started up the hill described; that his truck was going about 35 miles per hour when he reached the crest of the hill; and that when he could see over the hill and saw nothing coming he motioned for the bus to go on by; but that the bus followed him about 500 feet before he started to pass and did not pass until he was pretty well down the hill, "pretty well to the bottom of the hill." Burchett said he was watching his speedometer "along there" and was going 35 to 40 miles per hour, "it was 37 or 38 miles an hour at one time." He said that the bus traveled parallel with him for 1,400 or 1,500 feet before it got in front of him, then speeded up all of a sudden and that somewhere around 250 or 300 feet south of Arkoe Road "he pulled back in and cut me off pretty short." Burchett said: "I didn't think he was going to miss me when he pulled in," and that the bus was less than 250 feet south of Arkoe Road when it got in front of him. Burchett said he reduced his speed by 10 miles per hour, "down to 25"; and that this reduction was "just before he cut in front of me," and "when he started edging over on my side of the road to cut in." Burchett said the bus driver thereafter "slapped on his brakes" when "there was approximately 50 feet between us." He said: "He cut right straight in front of me and I hit my brakes no more than I had to to keep him from hooking me and when he hit his brakes in front of me I figured there was fifty feet in between us at the most. * * * Both stop lights came on just like two balls of fire." He further stated: "The first thing I pulled and took a look around the left side to see if there was a chance to go on and there wasn't; there was a car coming, and I figured from the way I sat he was probably forty feet from the front of the bus, and I either had to hit this bus in the rear end or take the right-hand shoulder and I took the right-hand shoulder. * * * Just before I hit that telephone company truck—I don't know how I missed the bus. I could have stuck my arm out and touched the bus."

He never saw the telephone truck until he hit it. Burchett also said, concerning the bus, "So far as I know he must have stopped dead still. * * * I think he did. * * * I would say he did. So far as I am concerned that was it." He also said that the last he knew the bus was standing still by the telephone truck.

Durrant said the gravel truck went down the hill, going about 45 miles per hour; that he went about five miles per hour faster to pass it; that he knew the gravel truck was heavily loaded and that the bus, not heavily loaded, could have been stopped quicker than the truck. He saw the telephone truck from the top of the hill and saw plaintiff between it and the pavement. He said plaintiff never moved from that position and that as he went by they each waved to the other. Durrant said he passed the gravel truck on the hill; that "when I got around him I was approximately 30 feet or more by him before I pulled back in my right lane;" and that he then was "pulling away" from the gravel truck. He said that 60 feet south of the telephone truck he touched his brakes (air brakes) lightly to kill his speed; that he did this because plaintiff was standing close to the pavement; that he gave no arm signal of his intention to apply the brakes; that he did not look in his rear view mirror to see where the gravel truck was before applying the brakes; that his stop signal lights would not go on until the brakes go on; and that his speed (about 50 miles per hour) was reduced "not over ten miles per hour." Durrant said there was no southbound traffic at the time and also that he heard the noise of the impact when he was about even with the Arkoe intersection and he then stopped.

Plaintiff's account was that he was standing about three feet from the east edge of the pavement and about three feet in front of the left fender of the telephone truck; that when he first saw the vehicles they were about half way down the hill, with the bus already pulled over to the left-hand (west) side of the highway starting to pass;

that they traveled alongside about 1,600 feet; that the bus "pulled in rather sharply in front of the truck;" that "the bus was only a few feet ahead of this truck when he turned in;" that he estimated the distance between the front end of the truck and the back end of the bus, at the time the bus got back on the east side, as 35 to 40 feet; that he heard the release of the air brakes when the bus "was about 50 or 60 feet south of us;" that the bus slowed down "ten to fifteen miles from what it was going;" and that the gravel truck struck the telephone truck, then hit him and turned over on him. Plaintiff estimated that the bus began to pull in toward the right side of the pavement about 600 feet south of him; that it completed passing about 300 feet south of him; and that the bus "slowed down pretty fast." He also estimated that the bus was going between 50 and 60 miles per hour and that the gravel truck was "doing approximately five miles an hour less than the bus." He did not think the gravel truck would run any faster than 50 and it could have been "as little as 40 miles an hour at the time the bus started to go around it." Plaintiff said that the bus did not stop before it went by him; and he admitted he had said in a deposition that the slowing of the bus was gradual and that the bus continued by him at the speed (about 40 miles per hour) to which it had been reduced by application of the brakes. Plaintiff waved to the bus driver, then turned and saw the gravel truck "awful close" behind the bus. He said: "It was turned angling across the highway; might have been skidding; looked like the front wheels were turned all the way to the left;" and that "it looked like the front wheels might have been off the ground." Then the gravel truck struck the telephone truck and plaintiff took a couple of steps "trying to get across the highway" but it hit him.

Defendants' claim of being entitled to a directed verdict is based on their contentions that the testimony of Burchett that the bus stopped dead still in front of him is so contrary to the physical facts, and so

inherently impossible, as to be incredible as a matter of law; and that the part of Burchett's testimony that is credible and not contradicted by plaintiff himself shows the speed of the gravel truck was 25 miles per hour so that the bus (at its greater estimated speed) would have drawn away from the gravel truck so far that the bus driver's action in applying his brakes and decreasing speed, at the place where he did so, could not have had anything to do with the gravel truck going off the pavement. (Defendants calculate from their theory of speeds that the bus would have been 140 feet ahead of the gravel truck when the bus passed plaintiff.) We do not have to accept, and do not accept, Burchett's statement that the bus stopped dead still on the pavement, at or near the place where plaintiff was standing, because it is contrary to plaintiff's own testimony that the bus went on by him before the gravel truck reached him. (The only evidence as to stopping distance was 140 feet at 40 miles per hour.) Nevertheless, what Burchett said could be considered with the other testimony as some evidence of a considerable slowing of the bus, after turning in closely in front of his gravel truck, and this would not be in conflict with plaintiff's testimony. Even the bus driver admitted an application of the brakes causing some slowing when he did not know how close the gravel truck was. Defendants point out that plaintiff stated in his deposition that the slowing of the bus was gradual and said at the trial that what he said then was still his opinion. However, plaintiff explained his testimony at the trial by saying: "I said ten to fifteen miles an hour (slowing) that would be kind of sudden." Furthermore, it was the entire action of the bus driver, turning in closely in front of the gravel truck and then slowing without warning, on which plaintiff bases his claim of negligence.

Defendants' second contention depends upon plaintiff's being bound by Burchett's statement that his speed was 25 miles per hour after the bus began to turn back to the right (east) side of the road ahead of him. In the first place this was only an estimate (as were also statements as to distances); Burchett did not say he looked at his speedometer during this time but only that he had done so on the hill. We think the testimony of plaintiff and the bus driver, that the speed of the gravel truck was only about five miles per hour less than the speed of the bus, was sufficient for the jury reasonably to infer a higher speed than 25 miles per hour, particularly since Burchett said he was only about 50 feet behind the bus when its brakes were applied, which the bus driver said was done about 60 feet from the telephone truck. "A party may contradict his own witness by independent evidence showing facts to be different from those testified to by such witness." Talley v. Richard, 353 Mo. 912, 185 S.W.2d 23, 26; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 50; Vitale v. Duerbeck, 332 Mo. 1184, 62 S.W. 2d 559, 561; Smith v. Ohio Millers' Mutual Fire Ins. Co., 320 Mo. 146, 6 S.W.2d 920, 929; Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S.W. 764, 773. Defendants say Burchett was the only person in a position to know what the speed of the gravel truck was during the last 300 feet after he was passed by the bus. However, Burchett's estimate of speed, both on the hill alongside the bus and when the bus passed the gravel truck, was different from that of plaintiff and the bus driver, as was his estimate of the distance between plaintiff's position and the point where the bus got back on the right side of the pavement; also to be considered is the short space of time after the bus passed plaintiff until the gravel truck appeared off the pavement ("just like that (snap of the finger) the bus went by and turned and there it was") and plaintiff's testimony that he only took two steps before the gravel truck struck him. Furthermore, while Burchett's estimate of his speed was 25 miles per hour (after the bus passed), as hereinabove noted he also said "there was approximately 50 feet between us" when the bus driver "slapped on his brakes" and this was consistent with plain-

tiff's own testimony concerning the position of the two vehicles; as plaintiff's estimate was that the last time he had seen the gravel truck (when the bus got back on the east side) it was only 35 to 40 feet back of the bus. Our view is that the matter of comparative speeds of the two vehicles and the distances between them were fact issues for the jury to decide upon consideration of the testimony of all three of these witnesses.

Defendants cite Davis v. St. Louis Public Service Co., Mo.Sup., 316 S.W.2d 494, 498; Bauer v. Wood, 236 Mo.App. 266, 154 S.W. 2d 356, 359; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33, on their contention that plaintiff has not shown facts from which the conclusion could be drawn that any acts of the bus driver were the proximate cause of plaintiff's injuries. They also cite Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635; Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 498; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 670, 672, as holding that inferences must exclude guesswork, surmise or speculation, cannot rest on another inference, and must go beyond giving only an equal basis for two or more inconsistent conclusions. This is not a case like the Davis case, supra, and cases therein cited (316 S.W.2d loc. cit. 498) where the plaintiff's evidence showed nothing more than indefinite alternative estimates by a witness, one of which would have shown liability and the other would not. Plaintiff relies on Ritz v. Cousins Lumber Co., 227 Mo.App. 1167, 59 S.W.2d 1072. In that case, while the plaintiff was standing on the shoulder of a highway she was struck by a car that had been following defendant's car, which slowed down without warning except from its stop light. As here, the following car could not go to the left because of other traffic so went to the right onto the shoulder. It was held that the evidence therein justified a finding that the defendant's driver was negligent in slowing down suddenly without warning when the following car was so close be-hind and that, even if the driver of the following car was negligent in following so closely, the combined negligence of the two drivers was the proximate cause of plaintiff's injuries. Defendants say that the Ritz case is not applicable here because of plaintiff's statement that the slowing of the bus was gradual. The terms "gradual" and "sudden" are characterizations that could mean different things in different circumstances and to different people; but we think the principle of that case applies here because we have the additional factor of the bus turning closely in front of the gravel truck in passing and then slowing by 10 to 15 miles per hour (which according to the bus driver's testimony would have been within a space of 60 feet) without getting farther in front of the gravel truck than it did according to the evidence most favorable to plaintiff. Our conclusion is that plaintiff made a jury case and that defendants' request for a directed verdict was properly overruled.

■ Defendants allege error in giving Instructions 1, 4 and 10 and we find that they are all erroneous. We have hereinabove set out the substance of Instruction 1. Defendants say that it did not submit the negligence pleaded and that it failed to hypothesize sufficient facts to support a finding of negligence against them. The substance of the negligence pleaded was as follows: "[A] short distance before the place of the collision aforementioned the said passenger bus had passed the gravel truck at a high rate of speed and had pulled back on to the east side of the paved portion of Highway 71 and was proceeding closely in front of said gravel truck, and at about the time the passenger bus passed the truck which was standing on the east side of the highway, the defendants suddenly and without adequate warning slowed said bus and rapidly checked the speed thereof, and indicated by light signal an intention to stop or greatly reduce the speed of said bus without reasonable or timely warning thereof, well knowing that the

gravel truck was approaching closely behind said bus." The instruction did not require a finding that the bus driver "rapidly checked the speed thereof," or that he slowed the bus at all, but only that he "applied the brakes on said bus and thereby displayed an intention to reduce speed or stop." Thus, while the pleaded negligence was rapidly checking speed "without reasonable or timely warning," liability was predicated neither on failure to warn nor checking speed but on *giving warning* only. Burchett's testimony was not that he lost control of the gravel truck because the warning lights went on but because the bus had slowed so much that he "either had to hit this bus in the rear end or take the right-hand shoulder." (After the lights went on, Burchett had sufficient control to pull to the left to see if he could pass on that side.) Thus his evidence does not support the hypothesis of the instruction that only the display of the red lights on the rear of the bus "indicating an intention to reduce speed or stop" would or did cause him to lose control of his truck. For discussion of "Sudden or unsignaled stop or slowing of motor vehicle as negligence" see annotation 29 A.L.R.2d 5; Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, 247; Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912. On this record, we cannot hold that only *giving a warning* with an electrical signaling device (not followed by any apparent or substantial slowing) would constitute negligence. Therefore, we must and do hold this instruction prejudicially erroneous.

■ Instruction 4, in effect, told the jury that even the grossest negligence of Burchett was no defense if defendants "were negligent as submitted in Instruction 1" and that such negligence "combined, concurred or contributed in any degree with the negligence of said Charles Burchett in causing plaintiff James E. Waldrip to be injured."

Instruction 10 instructed the jury as to the meaning of defendants' sole cause instruction and then stated that if they found defendants "were negligent as submitted in Instruction 1," and that such negligence "thereby contributed in any degree whatsoever to cause the collision" then they could not find the issues of sole cause in favor of defendants and must find for plaintiff.

The trouble with both these instructions (in addition to only requiring a finding under Instruction 1 which we have held insufficient) is that they eliminate the essential element of proximate cause by omitting the requirement that the claimed negligence "directly contributed" and only requiring that it "contributed in any degree" or "in any degree whatsoever." This matter was recently discussed in Danner v. Weinreich, Mo.Sup., 323 S.W.2d 746, 751, in which many cases were cited holding similar modifying phrases "to weaken the element of causation in a contributory negligence instruction and to be erroneous."

■ As to refused Instruction X, given by the court as modified by it as Instruction 17, we think it could be improved by more definitely requiring a finding that the signal given by the electrical signaling device on the bus was a timely and adequate warning of such slowing of the bus as was made. We think such a requirement is particularly applicable in this case where there was evidence to show that the bus turned in closely in front of the gravel truck to complete passing, when the vehicles were traveling at fast speeds, and slowed so soon thereafter. Defendants say this same instruction was expressly approved in Christman v. Reichholdt, Mo.App., 150 S.W.2d 527, 530. However, that instruction ended in accordance with the modification of Instruction X made by the court in giving it as Instruction 17 and did not contain the broad direction of Instruction X that under its findings defendants "are not guilty of negligence as defined in other instructions."

The judgment is reversed and the cause remanded.

All concur.