**TRAVELERS INDEMNITY COMPANY,
Plaintiff-Appellant,**

v.

**Patricia Lee Britt WOODS and Gary W. Woods, Defendants-Respondents.**

No. 13076.

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 22, 1983.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied
Jan. 11, 1984.

Application to Transfer Denied
Feb. 15, 1984.

---

Albert C. Lowes, Catherine R. McBride, Thomas A. Ludwig, Buerkle, Lowes, Beeson & Ludwig, Jackson, for plaintiff-appellant.

G. Weber Gilmore, Sr., Rice P. Burns, Jr., Gilmore, Gilmore, Taylor & Burns, Sikeston, for defendants-respondents.

PREWITT, Judge.

Plaintiff issued an insurance policy to defendants insuring them against loss to their residence due to various perils includ-. ing fire. Plaintiff's lawsuit contended that defendants intentionally burned the residence to defraud plaintiff and that it was damaged because following the fire, in accordance with the terms of the policy, plaintiff paid the amount defendants owed to the holder of a note, whose payment was secured by a deed of trust on the house. Defendants counterclaimed for damages due to the fire and for damages and attorney's fees for vexatious refusal to pay.

A jury verdict denied plaintiff's claim and awarded defendant $82,000 on the insurance policy, $7,380 interest, and $10,000 as attorney's fee. Judgment was entered in accordance with the verdict. Thereafter, following plaintiff's filing of an after-trial motion, the trial court entered an order crediting plaintiff with the $38,772.94 it paid to the note holder and reducing the amount that defendants are entitled to receive from plaintiff to $60,607.06. Plaintiff appeals.

The principal issue tried was whether defendant Gary Wayne Woods intentionally set fire to the house. He was the only person in the house at the time the fire started and plaintiff presented expert testimony that the fire was intentionally set inside the home. Gary Woods denied that he set the fire and defendants presented expert testimony that it was caused by the house's electrical wiring.

Plaintiff has seven points relied on, five of which have subpoints, in total twenty-three contentions. In general plaintiff contends that the trial court erred in giving the jury the submission and damage instructions tendered by defendants; in submitting vexatious damages and attorney's fees or in not remitting the jury's award regarding attorney's fees; in allowing defendants' counsel to make certain comments in closing argument; in not allowing plaintiff to read certain admissions of defendant Gary Wayne Woods and in limiting plaintiff's cross-examination of him; and in allowing defendants and a former neighbor of defendants to testify that the furniture in defendants' home was "nice".

■ We first consider plaintiff's attack upon defendants' submission instruction. That instruction is set forth below.[1] Plaintiff contends that this instruction is erroneous because: (a) it submits evidentiary details, and (b) is argumentative, (c) is not a neutral and unbiased statement of the law, and (d) due to improper punctuation the affirmative defense instruction tendered by defendant was "in essence" not submitted. The affirmative defense instruction told the jury that they must find for plaintiff on defendants' counterclaim if they believed that either defendant "intentionally procured the destruction of the dwelling".

The evidentiary detail complained of is the legal description of the property. No prejudice could have resulted from that. How the instruction is argumentative and not a neutral, unbiased statement of the

law is not apparent from plaintiff's brief and we do not understand how it was. Although, as defendants admit, a comma would be more appropriate to precede "Unless", the jury would understand that if they determined that defendants had set the fire intentionally defendants should not recover. That was the issue at trial and the submission instruction referred to the affirmative defense instruction. We do not see how the jury could have been misled by this instruction.

■ We next consider plaintiff's contention that the damage instruction pertaining to defendants' claim was erroneous. That instruction is set out below.[2] Plaintiff contends that a damage instruction from MAI should have been used; that this instruction is erroneous because it lists the elements of damage which defendants claim; that it contains argumentative language and is not an unbiased statement of the law; that it was not supported by the evidence; that it directed a verdict for a particular amount when the amount of the loss was in dispute; that it failed to set forth which party had the burden of proof with regard to depreciation; that it inadequately defines "depreciation"; and that it directs the jury to compute interest and misinforms them with respect to computing interest.

There is no MAI instruction on damages appropriate to this case because it involved a total fire loss of both real and personal property and §§ 379.140 and 379.160, RSMo 1978, are applicable. See *Duckworth v.*

---

1.     INSTRUCTION NO. 12

Your verdict must be for defendants Patricia Lee Britt Woods and Gary W. Woods if you believe:

First, plaintiff issued its policy to defendants on defendants' house described as Lot 10, Block 3, Van Marshall Subdivision, East Prairie, Missouri 63845, covering loss to defendants' house, personal property and additional living expenses due to fire, and

Second, such property was damaged by fire, and

Third, the policy was in force on the date of such loss.

Unless you believe defendants are not entitled to recover by reason of Instruction No. 14.

2.     INSTRUCTION NO. 15

If you find in favor of the defendants Patricia Lee Britt Woods and Gary W. Woods on their claim for damages, then you must award defendants the sum of $59,000.00 for the loss of defendants' house and you must award defendants the sum of $29,500.00 less depreciation, if any, for the loss of defendants' personal property and you must award defendants such sum as you may find from the evidence that will fairly and justly compensate defendants for additional living expenses, plus interest on the above at the rate of 9% per annum from June 5, 1981.

The phrase "depreciation" as used in this instruction means and includes any reduction or lessening in value.

United States Fidelity and Guaranty Company, 452 S.W.2d 280 (Mo.App.1970). The damages here have to be assessed in accordance with these statutes and require a special instruction to inform the jury how to do so. In contending that an MAI damage instruction should have been given, plaintiff relies upon *Jones v. Columbia Mutual Insurance Company*, 636 S.W.2d 132 (Mo.App. 1982). That case said that MAI 4.02 should be given in a fire loss. However, there was no indication there that the "valued policy" statutes were applicable. They vary the assessment of damages from that provided in MAI 4.02. MAI 4.02 would not be applicable here as "fair market value" is not relevant to recovery for damages to the house and its contents and the other damages claimed do not relate to fair market value. Also, as stated in note 2 under that instruction, it is to be used in cases involving property damage only and this case was not so limited.

This is not similar to a personal injury case. There the various items of damages are not to be listed in a damage instruction as they often were prior to MAI. In view of the various damages provided under the policy it was necessary to list them so the jury would know what was at issue. Argument of counsel would not suffice as the jury would not have to believe what counsel told them as to what damages they were to assess. Here the jury needed direction from the court and this instruction adequately did that and it is not biased or argumentative.

Based upon defendants' testimony there was evidence of the ownership and value of the damaged property sufficient to support the instruction. There was no dispute as to the amount that defendants were entitled to receive for loss of the house and that is the only part of the instruction that directs a verdict for a particular amount if the issues are found in favor of defendants on their claim. The burden of proof was set forth in an instruction correctly patterned after MAI 3.01, and we find no error pertaining to burden of proof. Depreciation appears to be clearly and concisely defined in accordance with the definition given in

*Riccardi v. United States Fidelity & Guaranty Company*, 434 S.W.2d 737, 741 (Mo. App.1968).

■ The instruction correctly states the rule on interest. Defendants were entitled to interest at 9% from the date that their claim became due and payable under the policy. *St. Louis County National Bank v. Maryland Casualty Company*, 564 S.W.2d 920, 930 (Mo.App.1978); § 408.020, RSMo Supp.1982. There is no contention here that the date the jury was instructed to figure interest from was erroneous. However, because the jury was instructed to return a verdict for the full recovery under the policy and thereafter the trial court reduced that recovery by the amount plaintiff paid to the note and deed of trust holder, the jury computed interest on the full amount of the recovery on the policy. The full recovery was $82,000 and the credit allowed of $38,772.94 reduced the policy recovery in the judgment to $43,222.06. Interest at 9% on the latter amount for the period stated in the instruction is $4,960.29 and the interest must be reduced to this amount. We find no prejudicial error in the respects contended regarding this damage instruction except as to interest and that can be corrected by modifying the judgment.

We next discuss plaintiff's contention that the trial court erred in submitting to the jury vexatious damages and attorney's fees under § 375.420, RSMo 1978. Plaintiff contends that the evidence did not support such a submission and that the trial court erred in failing to order a remittitur of the attorney's fees awarded by the jury. Plaintiff asserts that it was obvious that the jury did not understand that they were to award attorney's fees only if they found vexatious refusal to pay because no percentage damages were awarded.

■ Vexatious damages are not allowed if an insurer has reasonable cause to believe and does believe that there is no liability under its policy. *Welch v. Western Casualty and Surety Company*, 567 S.W.2d 743, 748 (Mo.App.1978). However, refusal

to pay based on suspicion that the origin of a fire is incendiary without any substantial facts on which to base that suspicion is vexatious within the meaning of § 375.420. *Hounihan v. Farm Bureau Mutual Insurance Company of Missouri,* 523 S.W.2d 173, 175 (Mo.App.1975). A trier of fact may find that the refusal to pay was vexatious from the insurer's failure to establish the grounds on which the refusal was based. Id.

■ Here the insurer had only suspicion that defendant Gary Wayne Woods had set the fire until it employed an expert to investigate the fire. The jury could have found that the expert's investigation was not thorough, that his conclusions were not reasonable and believable, and that it was not reasonable for plaintiff to believe him. Only this witness, if he is believed, could have elevated plaintiff's suspicion to a reasonable belief. If he is not to be believed and the jury did not believe the plaintiff had reasonable cause to believe him and did believe him, then the refusal to pay was vexatious. We conclude that this was a jury issue, and the trial court properly submitted it to them.

■ It has been held that awarding only attorney's fees and no other vexatious damages does not nullify the award of attorney's fees. *Hayden v. American Cent. Ins. Co.,* 221 S.W. 437, 442 (Mo.App.1920), cert. quashed 289 Mo. 382, 232 S.W. 683 (1921). This holding has been questioned, See *Williams v. United Insurance Company of America,* 618 S.W.2d 229, 233 (Mo.App. 1981), but not changed and we believe it correctly states the law. Under § 375.420, if the refusal is without reasonable cause or excuse, the jury "may" make an award of damages and attorney's fees. It was so instructed here. Using "may" would indicate to the jury that they would not have to make the award even if they found no reasonable cause or excuse and that what award they made, if any, was discretionary. This could cause them to believe, correctly we think, that they could award either damages or attorney's fees or both. Thus, the trial court did not err in refusing to remit the award of attorney's fees.

Plaintiff next contends that the trial court erred in overruling its objection to defendants' counsel saying during closing argument, "That's the way to try a lawsuit, folks. Don't try the facts; try the poor little guy from down at East Prairie." Plaintiff's objection and contention is that this argument is an attempt to appeal to the sympathy of the jury by "contrasting the wealth of the plaintiff with the 'poverty' of the defendants".

"Poor" can have various meanings depending upon the context used, and its use alone does not indicate a reference to the contrasting wealth of the parties. The thrust of defendants' counsel's argument was not that defendants were impoverished, but that plaintiff was attempting to try Gary Wayne Woods' character rather than the facts of the lawsuit. Defendants' counsel's remarks leading up to and including the part objected to are set out below.[3] This argument was obviously in retaliation, in part at least, to comments made by plaintiff's counsel referring to Gary Wayne Woods as a "culprit", "by no stretch of the imagination, a sterling character", a tax evader, a person who made fraudulent claims, and an arsonist.

■ The trial court's broad discretion in supervising closing arguments is not lightly to be disturbed on appeal. *Lewis v. Bucyrus-Erie, Inc.,* 622 S.W.2d 920, 925 (Mo. banc 1981). Counsel is accorded wide latitude in argument, particularly where the

---

3. "Mr. Lowes wants you to say, 'Oh, he had no money.' He didn't owe credit card accounts. He gave his wife money to fix her house up, to buy food. They canned. They raised hogs. He traded cars. He worked some at Noranda. And in the year of '81, by Mr. Lowes' own examination, he said he built one house and made five thousand and remodeled another one and made thirty-five hundred. That's $8500. But because he hasn't filed a tax return for 1981, that makes him an arsonist. Makes him broke, a thief, a cheat.

That's the way to try a lawsuit, folks. Don't try the facts; try the poor little guy from down at East Prairie."

comment complained of is a retort or response to argument of opposing counsel. Id. 622 S.W.2d at 926. Defendant's counsel was responding to comments made by plaintiff's counsel and with the wide latitude given counsel we find no abuse of discretion by the trial court here.

■ Plaintiff contends in its next point that the trial court abused its discretion in not allowing plaintiff to read admissions of defendant Gary Wayne Woods regarding a prior fraudulent insurance claim he made involving intentional damage to an automobile and in restricting plaintiff's cross-examination of him regarding that claim. As a part of this point plaintiff also contends that the trial court erred in restricting cross-examination of him regarding his conviction for manslaughter, his "female troubles", and his method of reporting his income for tax purposes.

Plaintiff contended that Mr. Woods admitted the fraudulent claim in a statement given to plaintiff's attorney after the fire and sought to read parts of the statement into evidence. Even if we assume that evidence of a prior fraudulent claim would have been relevant, the statement did not establish that this had occurred. Mr. Woods did not admit that the claim was fraudulent in the statement. He said that he and another person had battered "one anothers cars", but did not admit that he had withheld this information from the insurance company and said that he submitted a claim because he had "hit a ditch earlier." Whether other evidence plaintiff sought to offer might have made the statement admissible we do not decide as there is no contention now that the other evidence should have been admitted. Plaintiff's brief does not cite us to any place in the record where the trial court limited plaintiff's cross-examination of defendant Gary Wayne Woods regarding the claimed fraudulent insurance claim and we find none.

■ Plaintiff's counsel was not prevented from showing the crime that defendant was convicted of but from trying to display how it occurred. Albert C. Lowes, one of plaintiff's attorneys, asked defendant Gary Woods on cross-examination if he had been convicted of voluntary manslaughter. Woods replied that he did not remember what the charge was. Plaintiff's counsel then attempted to show that Woods "took a pistol" and shot someone. The trial judge stated that plaintiff's counsel was "acting out on the floor the pistol-pointing and all sorts of gyrations". How the offense occurred was not relevant and the trial court correctly stopped counsel from attempting to show it. The details of a prior conviction may not be shown. *State v. Powell*, 632 S.W.2d 55, 58 (Mo.App.1982). See also *State v. Shepard*, 654 S.W.2d 97, 100 (Mo.App.1983). Plaintiff's counsel also mentioned that he had the record of the conviction and if he wished to show whether the conviction was for voluntary or involuntary manslaughter, he could have offered that record into evidence. See § 491.050, RSMo Supp.1982.

During cross-examination of Mr. Woods, plaintiff's counsel offered to show by questioning Mr. Woods, "that beginning about four to five months before, he took up with a Donna Manyon, also called Donna LeMay. His wife was provoked about it. There was a divorce pending at the time. It was later granted." Plaintiff contended this was relevant as a motive for arson. Following discussion regarding the offer, plaintiff's counsel asked Mr. Woods if "one of the reasons your wife was seeking a divorce from you was because you had been associating with a Donna Manyon for some three or four months?" Mr. Woods stated that was a possibility. Plaintiff's counsel then asked, "Isn't it a fact that one of the reasons that your wife had filed for a divorce, which ultimately went through, during this period, and some three or four months before, leading up to that time, that you were seeing or having an affair with a Donna Manyon, a 20 to 22-year-old female?" Mr. Woods replied, "That's a possibility that was one of her reasons." Counsel was able to ask and present to the jury the same things which he put in his offer of proof and thus has no valid complaint regarding the offer.

Plaintiff claims that cross-examination of Mr. Woods regarding his tax return was relevant because it showed that defendants did not have the funds to have bought certain personal property during the period they claimed and that if defendant Gary Wayne Woods would lie on his tax return, he would not be "scrupulously honest to an insurance company". The trial court originally indicated it might restrict questions about the returns but thereafter allowed plaintiff's counsel to ask extensive questions from the returns. No offer of proof was made as to what plaintiff was prevented from showing and we do not have the tax returns in the record. We cannot see how any limitation upon this cross-examination prejudiced plaintiff. The extent of cross-examination on collateral matters to attack a witness's credibility is subject to a broad exercise of discretion by the trial court. *City of St. Peters v. Gronefeld,* 609 S.W.2d 437, 442 (Mo.App.1980); *Parks v. Midland Ford Tractor Company,* 416 S.W.2d 22, 31 (Mo.App.1967). The trial court was extremely lenient in allowing the cross-examination of Woods and no abuse of discretion was committed by it.

Plaintiff contends in its final point that the trial court erred in allowing defendant Patricia Woods and one of defendants' witnesses, a former neighbor, to state that defendants' furniture was "nice". No objection was made when Mrs. Woods said she had "real nice furniture", so that alleged error is not preserved for our review. See Rule 84.13(a). However, in any event, this testimony was proper.

Generally, witnesses must state facts from which the jurors are to form their opinion, but when a witness has personally observed events, he may testify to his "matter of fact" comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life. *State v. Morrow,* 541 S.W.2d 738, 742 (Mo. App.1976) (allowing testimony that one person "pointed" at another).

Witnesses are permitted to express conditions in terms understandable to the average person, even though the term utilized is a summary of a combination of sensory impressions or separate physical conditions. *Whitney v. Central Paper Stock Company,* 446 S.W.2d 415, 419 (Mo.App. 1969) (holding that testimony that wood was "rotten" should have been allowed). The test for allowing such is that when it is impossible or extremely difficult for a witness to convey an accurate and actual meaning, and the nature of the thing described may be more clearly and practically conveyed to the jury by a summary of the witness's impressions, or by comparison with some ordinary object or condition familiar to the court or jury, then the practical administration of justice requires acceptance of the testimony even though it may be, in a sense, the conclusion of the witness. Id. See also *State v. French,* 476 S.W.2d 509, 512 (Mo.1972) (describing clothes as "flashy" held proper). The description of furniture as "nice" is similar to that allowed in those cases and would be within the rule they state. This contention is denied.

Except for the calculation of interest referred to above, we find no error. The judgment is modified by reducing it by $2,419.71, the amount the interest was excessive as of the date of the verdict, and as modified, the judgment is affirmed.

GREENE, C.J., CROW, P.J., and FLANIGAN and MAUS, JJ., concur.