Margaret A. MOHR, Appellant,

v.

Michelle MOBLEY, Respondent.

No. WD 51830.

Missouri Court of Appeals,
Western District.

Submitted Aug. 27, 1996.

Decided Feb. 11, 1997.

**320**

Charles R. Buckley, Independence, for appellant.

Paul V. Herbers, Kansas City, for respondent.

Before HANNA, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

This case arises out of an automobile collision which involved three vehicles. Margaret A. Mohr, plaintiff-appellant, appeals from the trial court's judgment in favor of Michelle Mobley, defendant-respondent. Ms. Mohr contends that the trial court erred (1) in allowing two witnesses to testify that in their opinion the defendant was unable to avoid the collision with Ms. Mohr's car, which was waiting at a stop sign; and (2) in overruling Ms. Mohr's objection to testimony by a witness that the collision between his vehicle and Ms. Mobley's vehicle (immediately prior to the collision between Ms. Mobley's vehicle and Ms. Mohr's vehicle) was his fault. Ms. Mohr contends that the testimony constituted lay opinions as to ultimate issues in the case and was erroneously admitted because it invaded the province of the jury. We reverse the judgment and remand the case for a new trial.

The collision occurred May 15, 1992, at approximately 10:00 p.m. in Blue Springs, Missouri, near the intersection of Woods Chapel Road and Liggett Road. At that location, Woods Chapel Road is a four lane roadway running north and south, divided by a grass median. There is a wide shoulder on Woods Chapel Road near the intersection at Liggett Road. When the accident occurred, Ms. Mohr was stopped at a stop sign on Liggett Road, facing west, waiting for traffic to clear so that she could make a right-hand turn onto Woods Chapel Road. At the same time, Ms. Mobley was traveling north on Woods Chapel Road, occupying the right-hand lane. David Duncan was traveling north on Woods Chapel Road in the left-hand lane. Ms. Mohr noticed Duncan's vehicle in the left-hand lane of Woods Chapel Road with his right turn signal activated. Ms. Mohr also observed Ms. Mobley's blue Camaro in the right-hand lane "speeding a little fast." She estimated that Mobley was driving at least 50 mph. Duncan, who wished to make a right-hand turn onto Liggett Road, attempted to change lanes to the right hand lane in order to be able to turn right on Liggett. Before changing lanes, Duncan asked his passenger, John Swartz, whether traffic was clear so that he could make the lane change. Swartz informed Duncan that, if he hurried, he could successfully change lanes. Duncan, according to Swartz, failed to hurry, and as he moved into the right-hand lane, his van collided with Ms. Mobley, who was coming up in the right lane. Duncan's van hit Mobley's car on the left side of the Camaro at the "crease" of the driver's side door, where the door hinge is located. Seconds after the first collision, Ms. Mobley drove her vehicle on to Liggett Road and collided with the back of Ms. Mohr's vehicle, which was still stopped at the stop sign.

On May 19, 1995, Margaret Mohr brought an action against Ms. Mobley for damages she incurred as a result of injuries sustained in the accident. Duncan was not a party to the action, having previously settled the claim against him. After a trial, the jury returned a verdict in favor of defendant Mobley on June 22, 1995. The trial court entered judgment in accordance with the jury's verdict. Ms. Mohr appeals.

In Point I, Ms. Mohr contends that the trial court erred in overruling her objection to testimony by two witnesses, John Swartz and David Duncan, that Ms. Mobley did not have an opportunity to avoid the collision with Ms. Mohr's vehicle. Ms. Mohr claims that such testimony constituted lay opinions that were erroneously admitted into evidence

because the testimony improperly invaded the province of the jury.

John Swartz, who was a passenger in Duncan's vehicle, testified to the following, while being questioned by defense counsel:

Q. From the time of the impact with your car and Michelle Mobley's to the time of the impact with Margaret Mohr's car, did you have a chance to see Michelle Mobley's car between first impact and second impact?

A. Yes.

Q. And how much distance and time were involved if you could tell us?

A. I would say probably 50 feet from where they hit us to the plaintiff's car.

Q. Okay. How about time, do you have an estimate as to the time?

A. Matter of seconds.

Q. Based on what you saw at that time, did she have an opportunity to avoid that second collision?

MR. BUCKLEY: Judge, I renew my objection. That is what the jury is here to decide. I think that's invading the province of the jury.

THE COURT: I'll let him answer it.

A. No. I don't think she had a chance to avoid hitting the second car.

Similar testimony was elicited from David Duncan, the driver who pulled into Ms. Mobley's lane, by defense counsel in the following interchange:

Q. Based on your observation of that timing and distance, did she have an opportunity to avoid the second collision?

MR. BUCKLEY: Your Honor, object on the basis it invades the province of the jury.

THE COURT: He may answer.

THE WITNESS: Pardon me?

THE COURT: You may answer.

THE WITNESS: I don't—she looked like she tried to do something. She couldn't—there wasn't much room for her to move, and then it was gravel right there, sand and gravel, so she might have went onto worse. I don't know, I'm not sure. I'm not an expert. I don't think so.

Generally, a witness testifies to facts, not opinions or conclusions, and a jury draws its conclusions from those facts. "The basis of the opinion rule is that inferences and conclusions of unskilled witnesses are superfluous because they can be drawn by the jury as well as by the witness and, therefore, the witness should be required to give the jury the facts and data he has observed so that they may do so." *Kennedy v. Union Elec. Co. of Missouri*, 358 Mo. 504, 216 S.W.2d 756, 761 (1948). But when it is impossible or extremely difficult for a witness to convey an accurate and actual meaning, and the nature of the thing described may be more clearly and practically conveyed to the jury by a summary of the witness's impressions, or by comparison with some ordinary object or condition familiar to the court or jury, then the practical administration of justice requires acceptance of the testimony even though it may be, in a sense, the conclusion of the witness. *Brawley v. Esterly*, 267 S.W.2d 655, 662 (Mo.1954). The test is: "Does the jury need any inferences from the witness because his observed data cannot be adequately reproduced by him." *Kennedy*, 216 S.W.2d at 761. McCormick discusses the law regarding opinions on ultimate issues in the following excerpt:

[T]he terms "fact" and "opinion" denote merely a difference of degree of concreteness of description or a difference in nearness or remoteness of inference. The opinion rule operates to prefer the more concrete description to the less concrete, the direct form of statement to the inferential. But there is still another variable in the equation. The purpose of the testimony has had an effect on the degree of concreteness required. In the outer circle of collateral facts, near the rim of relevancy, evidence in general terms will be received with relative freedom, but as we come closer to the hub of the issue, the courts have been more careful to call for details instead of inferences.

\*   \*   \*   \*   \*   \*

*Undoubtedly there is a kind of statement by the witness which amounts to no more than an expression of his general*

*belief as to how the case should be decided.... It is believed all courts would exclude such extreme expressions. There is no necessity for this kind of evidence; to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses; and in any event it is wholly without value to the trier of fact in reaching a decision.*

McCormick on Evidence § 12, at 47 (4th ed. 1992) (emphasis added)(footnotes omitted). Generally, opinions of lay witnesses are not helpful to juries. Juries want facts, so they can draw their own inferences as to the ultimate issues. Lay witness opinions on non-ultimate issues are commonplace, and often proper. Moreover, on many matters, the opinions are not consequential because such opinions do not go to the ultimate issue. The matter becomes more troublesome, though, when the lay opinion elicited goes directly to a key issue of the case.

■ A lay witness generally cannot render an opinion as to the ultimate issue in a case. Section 490.065, RSMo 1994 authorizes an expert witness to render an opinion on an ultimate issue in a case "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The statute provides that in those cases, the opinion of the expert witness is not objectionable as "invading the province of the jury," even though the opinion goes directly to the ultimate issue of the case. *See* Section 490.065.2. We are not aware of any authority, however, which suggests that lay opinion testimony should be admitted as to the ultimate issue of the case. The long-standing rule is to the contrary. For example, in *Gillis v. Singer*, 86 S.W.2d 352 (Mo.App. 1935), an action was brought for injuries sustained by an eight-year-old child when she was struck by an automobile while crossing a street. Defendants argued that the trial court erred in excluding testimony from a passenger in the automobile which hit the girl that the driver of the automobile did "everything that he possibly could" under the existing conditions to avoid striking the child. *Id.* at 358. The appellate court held that the testimony was properly excluded, stating: "The testimony was obviously a mere conclu-

sion of the witness and invasive of the province of the jury." *Id.*

The objection that an opinion "invades the province of the jury" is simply an objection that the opinion addresses an ultimate issue in the case and should not be admitted because the opinion is a statement of inference rather than of facts, and that the jury will not be helped, and may even be misled, by hearing the witness's inference, especially if the jury is not provided the underlying facts upon which the witness's inference is based. In this case, an issue of whether the defendant "could have avoided" the collision in question is an ultimate issue of the case. In *Irvin v. Kelting*, 46 S.W.2d 924 (Mo.App. 1932), an action for injuries sustained by a boy on a scooter hit by a motorist, a witness to the accident was asked during trial whether defendant could in any manner have stopped his automobile and have avoided hitting the boy. *Id.* at 927. The court sustained an objection to the testimony as invading the province of the jury. The Eastern District Court of Appeals affirmed the trial court's ruling, stating:

We think the action of the court was entirely proper. The question was not hypothetical, but sought an opinion from the witness on a matter concerning which the jury could and were required to form their own conclusions from all the facts in evidence. The objection to it was therefore well taken....

*Id.*

The defendant, in her effort to overcome the trial court's skepticism about allowing such testimony, relied upon *Myers v. Morrison*, 822 S.W.2d 906 (Mo.App.1991), and urged *Myers* as authority for such testimony. In *Myers*, defendant alleged that the trial court erred in sustaining plaintiff's objection to defendant testifying as to whether a motorist had enough room to pass around another vehicle and avoid a collision. *Id.* The court in *Myers* stated the law that witnesses generally do not give opinions or make conclusionary statements in their testimony, unless they personally observed events, in which case they may testify to their comprehension of what they have seen in a descrip-

tive manner which actually constitutes a conclusion, opinion or inference, "if the inference is common and accords with the ordinary experiences of everyday life." *Id.* (quoting *Travelers Indem. Co. v. Woods,* 663 S.W.2d 392, 399 (Mo.App.1984)). The court held that on retrial, if defendant's attorney laid the proper foundation, defendant would be permitted to testify whether she observed as a matter of fact that the motorist had enough room to avoid the collision. *Id.*

In our view, *Myers* is somewhat different from this case in that in *Myers* the witness was really being asked about her observation of the amount of space available to the defendant to pass the other vehicle. The question was not so broad as a question seeking an opinion as to whether defendant "could have avoided the collision." The question in *Myers* would be similar to asking a witness in this case whether the witness thought there was enough room on the shoulder of the road for Mobley to pull off on the shoulder.

Defendant also cites *Sullivan v. Union Elec. Light & Power Co.,* 331 Mo. 1065, 56 S.W.2d 97 (1932) which involved a complex automobile collision. One of the defendants in *Sullivan* was asked the following:

"Now, let me ask you this, if you had gone right on ahead at that time, if you had not applied your brakes at all and gone right straight on ahead, and the truck kept coming like it did, would the truck have hit your Ford?" Appellants objected on the ground that the question called for a conclusion and invaded the province of the jury. The court overruled the objection, appellants excepting, and the witness answered: "I think that the left front fender and the right fender of the truck would have collided."

*Id.* 56 S.W.2d at 104. The Supreme Court held that the trial court properly admitted the testimony, stating:

We think in the circumstances of this case the testimony objected to was properly admitted. The situation about which Schulte was testifying was one naturally difficult to portray accurately, especially as the relative positions of the two vehicles were changing every instant. It is clear

the witness was unable to describe the situation so as to enable the jury to understand it accurately otherwise than as he did, by stating the impression produced in his mind by what he had observed at the time.

*Id.* In our view, *Sullivan* is distinguishable because there was no other practical way for the witness to communicate his observations related to the movement, position and direction of the two vehicles. It was really a way of addressing the relative positions of the two vehicles. Again, we believe this differs from asking the witness if the defendant could have avoided the collision. Defendant also calls our attention to *Ritz v. Cousins Lumber Co.,* 227 Mo.App. 1167, 59 S.W.2d 1072 (1933), a case which, in our view, is clearly inapposite because it involved an *expert* witness, and the issue there was as to the qualification of the expert to offer the opinion in question.

■ Here, the question is whether the jury needed Swartz, Duncan's passenger, to supply any inferences to the jury because of his inability to relate the observed factual data in any other meaningful way. We conclude that Swartz probably was not entitled to assert his opinion as to whether Ms. Mobley had "an opportunity to avoid that second collision." His testimony could have been more helpful focusing on distances, speeds, locations of objects, and so on. The jury could then have supplied its own inferences. In his testimony, Swartz did not give a clear articulation of the facts upon which his opinion was based. The distances and the time frame were not addressed with precision in his testimony, nor was the physical layout of the intersection. The question asked of Swartz was not seeking merely a summary of factual detail already conveyed, but instead was seeking to elicit Swartz's inference from the facts he observed. Although trial courts have broad discretion on such issues, we believe the objection should have been sustained. Swartz was later impeached as to his opinion on cross-examination, when plaintiff's counsel demonstrated that Swartz's perception of the distances involved was faulty. We believe that this weakened Swartz's opinion, and served to minimize the prejudice. We

**324**

also conclude that the admission of the opinion of Duncan, the driver, while likewise improper, was not extremely influential. Duncan's opinion testimony as to whether Mobley could have avoided the collision with Mohr's vehicle ("I don't know. I'm not sure. I'm not an expert. I don't think so.") was weak and tentative. Thus, we doubt that these errors, standing alone, warrant relief for appellant.

■ We next turn, however, to Ms. Mohr contention that the trial court erred in overruling her objection to testimony by Mr. Duncan that the collision between his vehicle and Ms. Mobley's vehicle (immediately prior to the collision between Ms. Mobley's vehicle and Ms. Mohr's vehicle) was his fault. Ms. Mohr argues that such testimony also constituted a lay opinion as to an ultimate issue in the case and was erroneously admitted.

Duncan was asked the following question by defense counsel on direct examination:

Q. Do you believe that as far as the impact between your car and Michelle Mobley's car that you were at fault?

A. Yes

MR. BUCKLEY: Same objection. I just wanted to clarify for the record, same objection, invades the province of the jury.

In our view, Duncan should not have been permitted to give his opinion that the collision between his vehicle and Mobley's vehicle was "his fault," to the extent that this constituted a statement of opinion that Mobley was without fault. It might have been permissible for him to acknowledge that he *participated* in the fault for the collision, or that he was guilty of errors which *contributed* to the collision with Mobley. Therefore, the meaning of the question was tricky, and the question may have seemed relatively harmless to the trial court at the time. However, we believe that *in context* the question was seeking Duncan's opinion as to whether the collision with Mobley was *exclusively* his fault. We do not know why Duncan, who never saw Mobley until after he hit her, would be qualified to offer his inference as to whether Mobley had any fault in the collision. We do not know all of the facts which constitute the foundation of his opinion that he was the only one at fault. We agree with Mohr that Duncan's testimony was improper opinion testimony as to an ultimate issue.

■ Plaintiff presented other evidence suggesting that Mobley shared fault to some degree for the collision. There was evidence that Duncan was signaling to change lanes before he turned, and that Mobley failed to take any evasive action up until the point where Duncan actually hit her. There was evidence that she did not apply her brakes, or move to the side, although there was a shoulder on Woods Chapel Road at that point. Plaintiff also showed that Mobley had approximately 130 feet in which to take action to avoid hitting Mohr. There was some evidence suggesting that Mobley was traveling at an excessive speed at the time of the collision with Duncan. We are inclined to believe that the jury was unduly influenced by Duncan's willingness to take all the fault upon himself, together with the opinions of Duncan and Swartz that Ms. Mobley could not have avoided the collision. We conclude that the admission of the opinion testimony was reversible error.

The judgment is reversed and the case is remanded to the trial court for a new trial.

HANNA, P.J., and EDWIN H. SMITH, J., concur.