UNITED MISSOURI BANK, N.A. Conservator of the Estate of Dennis Gallagher, Appellant,

v.

CITY OF GRANDVIEW, MO., et al., Defendant,

J & D Enterprises, Respondent.

No. WD 63955.

Missouri Court of Appeals, Western District.

Dec. 6, 2005.

Ronald M. Sokol, Springfield, William G. Cownie, Co-Counsel, Lee's Summit, for Appellant.

Dana M. Harris, Kansas City, for Respondent.

Before: SMITH, C.J., LOWENSTEIN and ELLIS, JJ.

HAROLD L. LOWENSTEIN, Judge.

This appeal stems from a jury trial in which a shopping center owner was sued for negligent placement of a driveway exit where the appellant's ward was injured by an exiting motorist. This is the second appeal of this cause of action. The first appeal followed the grant of the respondent's motion for summary judgment. See this court's opinion in *United Missouri Bank, N.A. v. City of Grandview*, 105 S.W.3d 890 (Mo.App.2003).

As a preliminary matter, the respondent, J & D Enterprises (J & D), encourages this court to deny each of the appellant's points on appeal due to the appellant's sporadic use of transcript citations for many factual references. Despite deficiencies in the appellant's brief, this court will examine the points raised on appeal. *State v. Westcott*, 121 S.W.3d 543, 545 n. 2 (Mo.App.2003).

## I. FACTS

The record viewed in light most favorable to the verdict and judgment reveals that on October 9, 1996, at approximately 5:28 p.m., in Grandview, Missouri, Dennis Gallagher was severely injured when Wal-

ter Klammer made a left turn from the Farm Shopping Center's (Farm Center) central exit into and across Blue Ridge Boulevard. Gallagher's motorcycle, which was traveling eastbound on Blue Ridge Boulevard, struck Klammer's car. The Farm Center is owned by J & D Enterprises. Gallagher, who was seventeen years old at the time of the accident, sustained, among other things, brain stem injuries, a broken leg, and permanent crossing of the eyes. He currently suffers from a seizure disorder and moves only with the assistance of a walker or wheelchair. Gallagher's grandparents currently care for him. The appellant, United Missouri Bank, N.A. (Appellant), acting as conservator of Gallagher's estate, originally brought suit against the City of Grandview (City) and J & D. Appellant settled with Klammer.

Appellant sued J & D in negligence, alleging that Gallagher's injuries resulted from the dangerous condition existing at the central entrance/exit (central exit)[1] located on J & D's property due to inadequate sight distance, in that drivers heading eastbound toward the central exit had no notice of an upcoming dangerous "intersection" and that J & D had actual and constructive notice of this dangerous condition. During the discovery phase of litigation, the trial court granted J & D's and the City's separate summary judgment motions, holding that the uncontroverted facts established that Klammer's actions were responsible for the accident and that no evidence established that the trees or fence contributed to Klammer's decision to enter the intersection. Appellant appealed to this court, which reversed the trial court and held that J & D failed to make a *prima facie* case for summary judgment on the issue of causation.

The City settled with Appellant before trial. This suit against J & D proceeded to trial in February of 2004. After a five-day trial, a unanimous jury found for the shopping center owner, J & D. Appellant raises five points of error. Additional facts relating to the points on appeal will follow the appropriate point.

## II. ANALYSIS

### A. LAY WITNESS TESTIMONY

Appellant first appeals the trial court's exclusion of the testimony of lay witnesses, all of whom worked in or shopped at the Farm Center, regarding their cautious use or lack of use of the central exit to make a left turn onto Blue Ridge Boulevard. Appellant's first point relied on states:

The trial court erred by ruling inadmissible as "lay opinion" the testimony of an employee, tenants and a patron of the Farm Shopping Center that they feared using the [central] exit from The Farm [Center] due to sight restrictions caused by the curve of Blue Ridge Boulevard and due to the speed of oncoming traffic, because (1) the testimony was admissible as "verbal shorthand" as evidence that ordinary people who were familiar with the [central] exit perceived a danger due to the stated factors and took precautions to avoid the danger, which is proper evidence of constructive notice of the danger that some form of injury was foreseeable in advance of the accident at issue, and (2) the evidence was admissible or curatively admissible as rebuttal of the testimony of the owner of The Farm [Center] that there is good sight distance from the [central] exit and that

---

1. Even though the center exit serves as an ingress and egress to the Farm Center, this opinion hereinafter refers to it as the "central exit" as Klammer was exiting from the Farm Center's parking lot when Gallagher's motorcycle struck Klammer.

he had no notice of danger concerning the [central] exit and his whole staff used that exit "a lot."

■ However, without reference in the point relied on, Appellant seems to contend in the legal argument portion of its brief, that under *Gates v. Sells Rest Home, Inc.,* 57 S.W.3d 391 (Mo.App.2001), the lay opinion testimony is admissible because such testimony is rationally based on the perceptions of the witnesses and is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. But this theory of admissibility was not set out in Appellant's point relied on. "[A]n argument not set out in the point relied on but merely referred to in the argument portion of the brief does not comply with the requirements of Rule 84.04(d) and the point is considered abandoned in this [c]ourt." *Brizendine v. Conrad,* 71 S.W.3d 587, 593 (Mo. banc 2002). This court will proceed to Appellant's arguments that are set forth in its point relied on.

In the point, Appellant argues that the trial court abused its discretion when it excluded the lay witness testimony as "verbal shorthand" evidence that ordinary people who were familiar with this exit perceived a danger, which in turn, provides constructive notice to J & D. Appellant then argues, in the alternative, that the trial court abused its discretion when it did not admit such testimony to cure the testimony of William Dietrich, a partner of J & D, who stated that he made "well over a thousand" left turns from the central exit without any concern about the available sight distance.

At trial, Appellant sought to introduce the testimony of three lay witnesses: Susan Hollon, Natress Kelly, and Betty Tevis (hereinafter "lay witnesses"). Ms. Hollon not only was a tenant and employee of the Farm Center, but also was an eyewitness to the accident. Ms. Kelly worked for a business located at the Farm Center. Ms. Tevis was a patron of the Farm Center. To first demonstrate that the intersection is dangerous, and alternatively, to show that J & D had notice of a dangerous condition, Appellant wanted to elicit from each of these witnesses that she used the central exit only cautiously or did not use the central exit at all to make left turns on Blue Ridge Boulevard. The trial court ruled that such testimony constituted impermissible lay witness testimony.

Appellant called Dietrich as an adverse witness. While Appellant did not inquire as to Dietrich's use of the central exit, he was asked about his knowledge of other accidents. On cross examination, J & D's attorney asked without objection being made by Appellant, "[D]o you have judgment of how many times you had occasion to make left turns out of that [central] exit during the [eleven] years that you were there?" Dietrich answered, "I'd say it would be well over a thousand." J & D's counsel next asked, "Did you ever have any problems," to which Dietrich answered that he did not. J & D's counsel asked, "Did you personally ever have any concern about the available sight distance that you had when you were preparing to make any of those left-hand turns?" Dietrich replied that he did not.

Appellant later put the three lay witnesses on the stand. It began by asking Ms. Kelly whether she used the central exit. Ms. Kelly answered by stating, "I did go out the [central exit], but not if I didn't have to." J & D then objected to Appellant's question, claiming that it was a violation of the trial court's *in limine* order. The court sustained J & D's objection stating that "I didn't want [the lay witnesses] coming in and saying, ["]I don't use that intersection,["] because ... implicit in that statement [is] that there is

something about the intersection that is a problem." Appellant then offered to prove all three of the lay witness' testimonies. Ms. Kelly testified as to her observations when exiting from the central exit. She stated that she saw a white picket fence and a tree.

Ms. Tevis next took the stand for an offer of proof. She testified that she saw a curve and fast-moving traffic when she looked to the left while at the central exit. Ms. Hollon testified as part of the offer of proof that she saw a curve, a fence, and part of the road. When Appellant asked her if she tried to turn left from the central exit, she answered no. J & D objected. Ms. Hollon was allowed to explain that she did not use the central exit because her business was on the east side of the Farm Center and, therefore, she had little occasion to use the central exit. Finally, Appellant offered to prove that each of the lay witnesses would testify that they would not use the central exit due to the fear caused by the curvature of Blue Ridge Boulevard and the speed of cars from its oncoming traffic.

Following the offers of proof, these three witnesses testified before the jury as to what each saw when she looked to the left while waiting to leave the Farm Center from the central exit. Ms. Kelly stated she could see a white picket fence, a tree, and oncoming traffic when she looked left from the central exit. When asked if she was familiar with the conditions to the left of the central exit, Ms. Tevis stated that "I tried to avoid that exit." J & D's counsel objected, and after a short conference between the lawyers and the trial judge, Ms. Tevis was dismissed. Ms. Hollon testified that "[t]here's a sign there and past that, then there's the grassy area, there's the

road, and, in particular, when you look out to the left, you'll see the businesses on the other side of the street." Appellant did not rely on the doctrine of curative admissibility to support its contention that the further testimony of these witnesses was made admissible.

■■■ The exclusion of evidence rests in the sound discretion of the trial court, and the judgment must be reversed only if the exclusion amounts to an abuse of discretion. *State v. Rose*, 86 S.W.3d 90, 99 (Mo.App.2002). An abuse of discretion exists when a trial court's ruling is clearly against the logic of the circumstances before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 99–100. In no event is reversal warranted if the exclusion did not prejudice the complaining party. *Thornton v. Gray Auto. Parts Co.*, 62 S.W.3d 575, 585 (Mo.App.2001). Therefore, the issue is whether the exclusion of the lay witness' testimony that each of them cautiously used or did not use the center exit due to a sight restriction was so arbitrary and unreasonable to shock the sense of justice and indicate a lack of careful consideration.

### 1. VERBAL SHORTHAND[2]

■■■ This court holds that the verbal shorthand argument advanced by Appellant does not apply to the facts of this case. Generally, a witness testifies to facts from which a jury draws its conclusions. *Mohr v. Mobley*, 938 S.W.2d 319, 321 (Mo.App.1997). Therefore, a witness generally should not testify to opinions or conclusions, unless it is "impossible or extremely difficult for a witness to convey an accurate or actual meaning, and the . . .

---

**2.** Appellant labels this doctrine as "verbal shorthand," although Missouri case law does

not seem to refer to this theory by this name.

thing described may be more clearly and practically conveyed by a summary of the witness's impressions or by comparison with some ordinary object or condition familiar to the court or the jury." *Id.* In that instance, the court may accept the witness's testimony, despite it being a conclusion. *Id.* In other words, if an extensive or involved description is warranted, a shorthand description is allowed. *See State v. French,* 476 S.W.2d 509, 512 (Mo. 1972) (holding that the witness' conclusion that the defendant's dress was "flashy" fell within this rule); *Beuttenmuller v. Vess Bottling Co.,* 447 S.W.2d 519, 526 (Mo. 1969) (allowing a witness to describe the sound she heard as an "explosion" even though the witness did not observe the pop bottle explode); *Travelers Indem. Co. v. Woods,* 663 S.W.2d 392, 399 (Mo.App.1983) (describing furniture as "nice" falls within this rule); *Whitney v. Cent. Paper Stock Co.,* 446 S.W.2d 415, 419 (Mo.App.1969) (holding the trial court erred when it excluded a witness' opinion that wood around a hole in a floor was "rotten").

■ Appellant conceded that the lay witnesses could not have testified that the intersection was "dangerous," for this would invade the province of the jury. Rather, from the court's reading of Appellant's argument in light of Appellant's first point relied on, it contends that a lay witness's testimony that the witness does not use a particular exit or cautiously uses such an exit, would come within this "verbal shorthand" rule and, therefore, be admissible. The trial court did not abuse its discretion by excluding this lay witness testimony. Appellant fails to fully explain how the lay witness testimony might come within the rules under *Mohr* and other "verbal shorthand" cases.[3] *See generally*

*French,* 476 S.W.2d 509; *Beuttenmuller,* 447 S.W.2d 519; *Woods,* 663 S.W.2d 392; *Whitney,* 446 S.W.2d 415. Here, the lay witness testimony that Appellant sought to introduce was not so complicated that only the use of a "short-hand description" would convey the description to the jury, and Appellant advances no authority that compels this court to extend the doctrine to the facts of this case.

## 2. DOCTRINE OF CURATIVE ADMISSIBILITY

■ The bulk of Appellant's argument is geared toward the theory that the lay witness' testimony, even if inadmissible, is admissible under the doctrine of curative admissibility. The doctrine of curative admissibility allows a party to introduce otherwise inadmissible evidence to answer the opposing party's previous introduction of inadmissible evidence if it would remove any unfair prejudice caused by the admission of the earlier inadmissible evidence. *Adams v. Burlington N. R.R. Co.,* 865 S.W.2d 748, 751 (Mo.App. 1993). To apply the doctrine of curative admissibility, the earlier evidence must have been inadmissible and was not objected to; the rebutting evidence is needed to remove an unfair prejudice that might otherwise ensue from the original evidence and the rebutting evidence must be of the same type or character. *Id.*

■ Specifically, Appellant disapproves of Dietrich's testimony, in which he was asked by J & D's counsel on cross-examination how many times he had made left turns from the central exit. Dietrich stated that he has made "well over a thousand" turns without any concerns about the available sight distance. Appellant argues that the opinion testimony of Hollon,

---

**3.** Appellant dedicates one sentence to this argument, despite relying on it in its first point relied on.

Kelly, and Tevis that each did not turn left from the central exit should have been admitted to cure the inadmissible testimony of Dietrich elicited by J & D's counsel. Furthermore, Appellant argues that the testimony of lay witness Hollon, who not only witnessed the accident but also was Dietrich's tenant and employee, should have been admitted to contradict Dietrich's testimony that his "whole staff" used the central exit "a lot." Appellant next argues that the testimony of lay witnesses Kelly and Tevis would have removed the unfair prejudice caused by Dietrich's testimony that he had no concern about the sight distance when making left turns from the central exit and that good sight distance exists.

J & D again claims that Appellant failed to preserve this argument for appeal when Appellant did not raise this argument in Appellant's *in limine* motions, trial objections, offers of proof, or Motion for New Trial. Because this is a remedial admission, it is difficult to understand how Appellant could anticipate this in a motion *in limine.* Also, the doctrine of curative admissibility does not apply if Appellant would have objected. Contrary to J & D's brief, Appellant did raise the doctrine of curative admissibility in his Motion for New Trial. Problematic, however, is Appellant's failure to raise the doctrine of curative admissibility in its offer of proof.

This court has previously denied a party's use of the doctrine of curative admissibility on appeal when the party's offer of proof failed to refer to the doctrine of curative admissibility as a theory of admissibility. *See Adams,* 865 S.W.2d at 752. In *Adams,* the theory of admissibility presented in the offer of proof was that "exclusion of the evidence of disability pay-

ments will result in double damages." *Id.* This court found that such a characterization does not sufficiently inform the trial judge as to the theory of admissibility. *Id.* The burden is on the party who is offering the evidence to explain the theory of admissibility. *Id.*

This court has examined the record made by Appellant and nowhere does Appellant reference the doctrine of curative admissibility as its theory of admissibility.[4] Instead, Appellant's offer of proof stated:

[APPELLANT's COUNSEL]: With regard to the evidence of the previous witness, we do offer to prove that she will testify to pre-testimonial offer, since we're staying away from these issues about avoiding the intersection in compliance with the Court's ruling.

I want the record clear that if allowed to testify, they would testify that they wouldn't use that exit. She did in this one case. And we'd do it as a standing offer for all three because of the fear caused by the curvature and the speed of oncoming traffic.

THE COURT: Okay.

[APPELLANT's COUNSEL]: It's going to stand for all three [witnesses].

THE COURT: It's already with me.

Because Appellant failed to inform the trial court of the theory of admissibility that was being invoked and, therefore, deprived the trial court of an opportunity to correct itself *during* trial in the instance it erred, then the introduction of the doctrine of curative admissibility upon appeal and reliance on plain error relief fails. Use of the doctrine of curative admissibility requires the presentation of this theory of admissibility in an offer of proof for the trial judge to consider. *See id.* Such a requirement

---

4. Notably, in its reply brief, Appellant fails to direct this court to the record where it raised

the doctrine of curative admissibility.

is necessary when contending with the curative admissibility doctrine because the justification for admission of the inadmissible latter evidence is to rebut the previously admitted inadmissible evidence. This is particularly important if the previously admitted inadmissible evidence was admitted days or weeks before the time the party seeking to introduce the rebuttal evidence under the doctrine of curative admissibility.

In any event, Appellant failed to demonstrate, and it is difficult to discern, Appellant's prejudice rising to the level necessary for reversal since the lay witnesses were permitted to testify to their observations while at the intersection in question. While Appellant was prohibited from directly asking whether each lay witness used the central exit, a reasonable inference stemming from the testimony actually elicited from each witness leads to the similar outcome: that each may have had reservations about using the central exit in light of what each saw while leaving the Farm Center from the central exit. Point I denied.

### B. Evidence of Alternate Safer Designs

■ Appellant's second point relied on, consisting of one sentence over a page in length, is somewhat difficult to interpret. Appellant asserts error because of the trial court limiting testimony of several of its witnesses and the limiting of Appellant's closing argument. Rule 84.04(d)(1) violations notwithstanding, it would seem that Appellant seeks relief from not being allowed to argue to the jury that (1) if there had been no central exit or (2) if the exit in question had been placed fifty feet to the east or (3) if only a right hand turn had been allowed, *then the accident would never have occurred.*

Rule 84.13(b) does not allow an appellate court to reverse any judgment unless the trial court's error materially affects the merits of the action. Without going into an extended examination of the court's rulings, suffice it to say the facts here presented a determination for the jury to make as to whether J & D was liable for any of the exit's deficiencies, and if those deficiencies were the proximate cause of the accident. This was not a situation where J & D's negligence was the sole cause of the injury. In the case at bar, Appellant admits it was allowed to tell the jury, "the exit wasn't necessary"; J & D could have redesigned the sight lines and could have requested a right turn only; and J & D could have moved the exit to the east. Additionally, the instructions allowed the jury to find for Appellant only if it found the limited sight distance "caused an unreasonable hazard to traffic."

Appellant was allowed to present evidence of negligence connected with the placement and design of the exit. The jury was well aware of and could make a determination of whether J & D's actions were a proximate and contributing cause of the damage. This was precisely what this court said should happen when it reversed summary judgment and returned the matter for a jury decision. *See United Mo. Bank, N.A. v. City of Grandview,* 105 S.W.3d at 901–02. The jury made that decision based on sufficient evidence by Appellant, and decided in favor of J & D. Any trial error in limiting evidence or closing argument cannot be deemed material. Point denied.

### C. Klammer's Statements Made to Officer Birkner

In its third point, Appellant argues the trial court erred when it admitted the testimony of police officer William Birkner on the basis the testimony constituted inad-

missible hearsay. Officer Birkner testified as to Klammer's statement made to him at the scene of the accident that "he thought that if he hurried up, he could make it across the street." J & D offered Klammer's out of court statement to show that Klammer in fact saw oncoming traffic, which leads to the inference that the central exit was not dangerous because Klammer could clearly see oncoming traffic. Here, there is no question that the desired testimony was hearsay. The issue is what, if any, hearsay exception should have applied.

■■■ Review of the admissibility of evidence is an abuse of discretion. *State v. Case*, 140 S.W.3d 80, 85 (Mo.App.2004). Hearsay is an out of court statement offered to prove the truth of the matter stated and is inadmissible unless the statement meets a recognized exception. *Taylor v. Republic Auto. Parts, Inc.*, 950 S.W.2d 318, 323 (Mo.App.1997).

The trial court apparently admitted Klammer's statement as an admission against interest. In order for a statement to qualify for admission under this exception, the statement must be offered by a party against an opposing party to the lawsuit. Because Klammer was not a party to this lawsuit, Appellant argues that this hearsay exception fails to apply.

■■■ To qualify as a admission against interest, the statement must meet each of the following requirements: (1) a conscious or voluntary acknowledgement by a party-opponent of the existence of certain facts; (2) the matter acknowledged must be relevant to the cause of the party offering the admission; and (3) the matter acknowledged must be unfavorable to, or inconsistent with, the position now taken by the party-opponent. *Nettie's Flower Garden, Inc. v. SIS, Inc.*, 869 S.W.2d 226, 229 (Mo.App.1993) (quoting *United Servs. of Am. v. Empire Bank*, 726 S.W.2d 439, 444

(Mo.App.1987)). Appellant is correct in that Klammer's statement fails to meet the first requirement of the admission against interest exception as he was not a party opponent and, therefore, the exception is inapplicable. However, another exception to the hearsay rule applies.

■■■ The declaration against interest exception to the hearsay rule requires (1) an unavailable declarant, (2) the declaration relates to a fact against the declarant's pecuniary, proprietary, or penal interest at the time the declaration was made, (3) the declaration concerns a fact personally cognizable by the declarant, and (4) the declaration is made under circumstances which render it improbable that a motive to falsify exists. *Id.* at 230.

■■■ Here, the record shows that because Klammer suffered from Alzheimer's disease at the time of trial, he was incompetent to testify at trial and, therefore, unavailable under the declaration against interest exception. His statement that "he thought that if he hurried up, he could make it across the street," implying his negligence, conflicts with his pecuniary interests at the time the statement was made. Furthermore, the declaration regards the accident in which Klammer was just involved in and, therefore, personally aware. And finally, no facts in the record indicate a probable motive for Klammer to make his statement unreliable.

Therefore, this court concludes that Klammer's statement to Officer Birkner was admissible as a declaration against interest. The trial court's reason given for the ruling was incorrect, but the correct ruling was made. Point denied.

**D. KLAMMER'S STATEMENTS MADE TO GALLAGHER'S FORMER ATTORNEY**

Appellant argues in its fourth point that the trial court erred when it excluded

Klammer's statement made to Randall Cain, an attorney who formerly represented Gallagher. Appellant first argues that the statement was admissible as an admission against Klammer's pecuniary interest. Alternately, Appellant argues that Klammer's comments to the attorney were admissible under the doctrine of curative admissibility to rebut the previously "inadmissible" statement of Klammer to Officer Birkner.[5] Because this court already held that the doctrine of curative admissibility requires preservation via an offer of proof, and because such offer of proof was not made defining the use of the curative admissibility doctrine as its theory for admission, this court does not reach the merits of Appellant's argument relating to this doctrine. However, this court will consider Appellant's argument that Klammer's statement was admissible as an admission against pecuniary interests.

This court reviews the admissibility of evidence for an abuse of discretion. *State v. Case*, 140 S.W.3d at 85. Appellant offered to prove that Cain would testify that on February 5, 1997, as part of his investigation of the accident in relation to his representation of Gallagher, Cain called Klammer. Cain's contemporaneously made notes during Klammer's conversation stated that Klammer "[s]topped 10 feet from the curb line before proceeding, looked left, then right, saw vehicle coming from right, that's why he accelerated. Nothing visible on the left. No problem with the sun either. He's sure he stopped 10 feet from the curb line. Telephone conversation with Walter Klammer."

■ The trial court ruled that the above evidence was inadmissible hearsay and that it did not qualify as a declaration against interest. Appellant now contends

that Klammer's statement was admissible as an admission. In order to have an admission, the declarant must be a party-opponent. *Nettie's Flower Garden, Inc.*, 869 S.W.2d at 229. It has already been determined that Klammer was not a party to this case, so Klammer's statement cannot be admitted as an admission.

■ However, Klammer's statement might have been admissible as a declaration against interest. But because Appellant failed to include Cain's deposition transcript, this court is unable to verify the context of Klammer's statement. Such context is necessary to determine whether Klammer's statement qualifies as a declaration against interest. To be admissible as a declaration against interest, among other requirements, the declaration when made must relate to a fact against the declarant's pecuniary, proprietary, or penal interests. *See id.* at 230. For example, if Cain informed Klammer that he was representing Gallagher against the City of Grandview and against the Farm Center (but not against Klammer), then Klammer's statement would not appear to be a declaration against interest because his statement does not work against Klammer. However, this information is not verifiable in the record that was provided to this court and, therefore, cannot be reached. Point denied.

E. LACK OF ACCIDENT EVIDENCE

The last point relied on contains several themes, some of which have been addressed in previous points. The most dominant is that error was committed when the trial judge limited lay testimony as to other accidents at or near the exit in question. Despite noncompliance with Rule 84.04 (which includes failure to utilize page references in the transcript), this

---

5. Klammer's statement to Officer Birkner was held to be admissible in part C above.

point will nevertheless be reviewed. The trial court sought to limit lay persons rendering an opinion that this particular exit was dangerous. Appellant acknowledges this testimony could only be offered to prove constructive notice to the landowner. The court did not allow the lay witnesses to testify as to the cause of accidents that had occurred but had not been seen by them. Appellant goes on to allege that J & D was allowed to argue in closing that Appellant did not introduce evidence of other accidents at this particular spot on Blue Ridge. Although Appellant did object to the argument, it did not raise this particular reason now presented on appeal. Point denied.

### III. CONCLUSION

This court affirms the trial court's judgment.

All concur.